(No. 46262.—

JAMES L. FUEHRMEYER *et al.*, Appellants, v. THE CITY OF CHICAGO, Appellee.—THE CITY OF EVANSTON *et al.*, Appellees, v. THE DEPARTMENT OF REGISTRATION AND EDUCATION, Appellant.

*Opinion filed March 29, 1974.—Rehearing denied May 31, 1974.*

Prince, Schoenberg, Fisher, Newman & Schulman, of Chicago (David B. Schulman, Richard B. Silverman and Fredric J. Kreiter, of counsel), for appellants James L. Fuehrmeyer *et al.*

William J. Scott, Attorney General, of Springfield (Herbert L. Caplan and William A. Wenzel, Assistant Attorneys General, of counsel), for appellant Department of Registration and Education.

Richard L. Curry, Corporation Counsel, of Chicago (William R. Quinlan and Richard F. Friedman, Assistants Corporation Counsel), for appellee City of Chicago.

Jack M. Siegel, Corporation Counsel, of Evanston, for appellee City of Evanston.

Stephen W. McCarty, Assistant City Attorney, of Rockford, for appellee City of Rockford.

Henry X. Dietch, of Chicago, for appellee Village of Park Forest.

Robert L. Stern, of Chicago (Mayer, Brown & Platt, of counsel), for *amicus curiae* American Life Insurance Association.

Canel & Canel, of Chicago (Jay A. Canel and Erwin I. Katz, of counsel), for *amicus curiae* Burns International Security Services, Inc.

MR. JUSTICE SCHAEFER delivered the opinion of the court:

These cases, which were consolidated in the circuit court of Cook County, involve the validity of Public Act 77—1818, which became effective October 1, 1972 (Ill. Rev. Stat. 1973, ch. 127, pars. 901-03). One of them is an action brought by James L. Fuehrmeyer and Gordon Juhl, individually and as representatives of all insurance brokers, against the City of Chicago to restrain the enforcement of the City's ordinance which licenses and regulates insurance brokers. In that action the City moved to dismiss the complaint, the motion was granted, and the plaintiffs have appealed. The other action was brought by the City of Evanston against the Department of Registration and Education of the State of Illinois. The relief sought was a judgment declaring Public Act 77—1818 unconstitutional on several grounds. In that action the Department's motion to dismiss the complaint was denied, and the

Department has appealed. Motions to transfer the appeals to this court under Rule 302(b) were allowed. Ill. Rev. Stat. 1973, ch. 110A, par. 302(b).

Public Act 77—1818 is as follows:

"An Act providing for the exclusive exercise by the State of the power to regulate certain professions, vocations and occupations.

*Be it enacted by the People of the State of Illinois, represented in the General Assembly:*

Section 1. Pursuant to paragraph (h) of Section 6 of Article VII of the Constitution of 1970, the power to regulate any profession, vocation or occupation for which licensing or registration is required by any of the Acts hereinafter listed in this Act, shall be exercised exclusively by the State and may not be exercised by any unit of local government, including home rule units.

Sec. 2. The Acts referred to generally in Section 1 are those Acts specifically listed in Sections 2.01 through 2.30.

Sec. 2.01. 'The Illinois Architectural Act', approved June 24, 1919, as now or hereafter amended.

Sec. 2.02. 'An Act to regulate the practice of chiropody in the State of Illinois', approved April 26, 1917, as now or hereafter amended.

Sec. 2.03. 'An Act to regulate the practice of dental surgery and dentistry in the State, and to repeal an Act therein named', approved June 11, 1909, as now or hereafter amended.

Sec. 2.04. 'An Act in relation to the regulation of persons engaged in the practice of funeral directing and embalming, and to repeal an Act therein named', filed July 8, 1935, as now or hereafter amended.

Sec. 2.05. 'The Illinois Land Surveyors Act', approved July 29, 1939, as now or hereafter amended.

Sec. 2.06. The 'Medical Practice Act', approved June 30, 1923, as now or hereafter amended.

Sec. 2.07. 'The Illinois Nursing Act', approved June 14, 1951, as now or hereafter amended.

Sec. 2.08. 'The Illinois Optometric Practice Act', approved June 15, 1951, as now or hereafter amended.

Sec. 2.09. The 'Pharmacy Practice Act', approved July 11, 1955, as now or hereafter amended.

Sec. 2.10. The 'Illinois Physical Therapy Registration Act', approved August 3, 1951, as now or hereafter amended.

Sec. 2.11. 'The Illinois Professional Engineering Act', approved July 20, 1945, as now or hereafter amended.

Sec. 2.12. 'The Illinois Structural Engineering Act', approved June 24, 1919, as now or hereafter amended.

Sec. 2.13. The 'Psychologist Registration Act', approved August 15, 1963, as now or hereafter amended.

Sec. 2.14. 'An Act to regulate the practice of accounting and to repeal certain Acts therein named', approved July 22, 1943, as now or hereafter amended.

Sec. 2.15. 'An Act in relation to the definition, registration and regulation of real estate brokers and real estate salesmen', approved June 29, 1921, as now or hereafter amended.

Sec. 2.16. The 'Illinois Certified Shorthand Reporters Act', approved August 20, 1965, as now or hereafter amended.

Sec. 2.17. The 'Social Workers Registration Act', approved September 8, 1967, as now or hereafter amended.

Sec. 2.18. 'An Act to license and regulate tree experts, to provide penalties for the violation thereof and to make an appropriation therefor', approved July 5, 1967, as now or hereafter amended.

Sec. 2.19. 'The Veterinary Medicine and Surgery Practice Act', approved August 14, 1961, as now or hereafter amended.

Sec. 2.20. 'Water Well Contractor's License Act', approved July 21, 1959, as now or hereafter amended.

Sec. 2.21. 'An Act to provide for licensing and regulating detection of deception examiners, and to make an appropriation in connection therewith', approved August 23, 1963, as now or hereafter amended.

Sec. 2.22. The 'Sanitarian Registration Act', approved August 23, 1965, as now or hereafter amended.

Sec. 2.23. 'An Act in relation to the regulation of business and vocational schools', approved July 13, 1955, as now or hereafter amended.

Sec. 2.24. 'The Illinois Water Well Pump Installation Contractors Licensing Act', approved August 20, 1965, as now or hereafter amended.

Sec. 2.25. The 'Nursing Home Administrators Licensing Act', approved September 22, 1969, as now or hereafter amended.

Sec. 2.26. 'An Act in relation to the practice of barbering, to prescribe penalties for the violation thereof, and to repeal an Act therein named', approved July 18, 1947, as now or hereafter amended.

Sec. 2.27. 'An Act relating to the practice of beauty culture', approved June 30, 1925, as now or hereafter amended.

Sec. 2.28. 'An Act to provide for licensing and regulating detectives and detective agencies', approved June 26, 1933, as now or hereafter amended.

Sec. 2.29. 'An Act for the regulation of the business of horseshoeing', approved June 28, 1915, as now or hereafter amended.

Sec. 2.30. The 'Illinois Insurance Code', approved June 29, 1937, as now or hereafter amended.

Sec. 3. If any provision of this Act or the application thereof to any person or circumstance is held invalid, the invalidity does not affect other provisions or applications of the Act which can be given effect without the invalid provision or application, and to this end the provisions of this Act are severable." Laws of 1972, pp. 76-78; Ill. Rev. Stat. 1973, ch. 127, pars. 901-03.

The bill which became Public Act 77—1818 (House Bill 3636) was passed in the Senate by less than a three-fifths vote. Section 6(g) of article VII of the Constitution provides: "The General Assembly by a law approved by the vote of three-fifths of the members elected to each House may deny or limit the power to tax and any other power or function of a home rule unit not exercised or performed by the State ***." Section 6(h) of article VII provides: "The General Assembly may provide specifically by law for the exclusive exercise by the State of any power or function of a home rule unit other than a taxing power ***." Since both of the cities which were the immediate parties to the consolidated action are home-rule units, much of the discussion in the briefs and on oral argument has related to the validity of the Act as it applies

to home-rule units under these constitutional provisions. But the effect of Public Act 77—1818 is not restricted to home-rule units. It applies to "any unit of local government, including home rule units," and we therefore first direct our attention to those constitutional objections which have been raised to the Act in its broader application. Since we find that those objections must be sustained, and it is unlikely that the narrower home-rule issue will recur in its present form, we do not discuss it.

The City of Chicago argues that House Bill 3636 was not validly enacted and hence did not become effective because it was not read by title three times in the Senate. Section 8(d) of article IV of the Constitution provides: "A bill shall be read by title on three different days in each house." The City's contention is based upon excerpts from the transcript of the debates in the Senate which fail to show that House Bill 3636 was read by title, although they do show that the bill was called upon third reading in the Senate, that there was a roll call and that the yeas and nays were taken by record vote. They were entered on the journal as required by the Constitution. Section 7(b) of article IV of the Constitution of 1970 provides: "Each house shall keep a journal of its proceedings and a transcript of its debates. The journal shall be published and the transcript shall be available to the public." We think that this contention of the City is answered by the subsequent provision of section 8(d) of article IV which states: "The Speaker of the House of Representatives and the President of the Senate shall sign each bill that passes both houses to certify that the procedural requirements for passage have been met." Whether or not a bill has been read by title, as the Constitution commands, seems fairly to be characterized as a procedural matter, the determination of which was deliberately left to the presiding officers of the two Houses of the General Assembly.

The City also advances the contention that when the President of the Senate signed House Bill 3636, he did so

upon the express understanding that the bill did not affect the regulatory powers of home-rule units of government, and therefore did not require the favorable vote of three-fifths of the members elected to the Senate. That understanding is said to have been based upon the explanations of the bill made by its senate sponsor. The question thus arises for the first time in Illinois as to the extent, if any, to which the courts should rely upon legislative debates. The problem has not arisen previously because we have not had legislative committee reports or transcripts of proceedings in the legislature, although the court has in the past referred to reports of drafting committees both of the bar associations and of other agencies. The question is an interesting and important one, but it bears only upon the home-rule aspect of Public Act 77—1818, and for the reason that has been stated we do not consider it.

The appellees contended in the trial court, and they renew the contention in this court, that Public Act 77—1818 violates section 8(d) of article IV of the Constitution of 1970, which provides: "A bill expressly amending a law shall set forth completely the sections amended." This provision was enacted exactly as it was proposed by the Constitutional Convention's Committee on the Legislature. The Committee's explanation is as follows:

> "The prohibition of 'amendment by reference' is designed to prevent an act from being amended simply by referring to it. For example, the 'amendment by reference' provision prevents an act from being amended through adding or subtracting language if the relevant portions of the act to be amended are not set forth. Addition of or subtraction of a 'not' within a sentence of a law could drastically alter the effect of the law; hence, the need exists to clearly show on the record exactly what is being amended.
>
> To provide adequate constitutional protection against 'amendment by reference,' the recommended proposal is

that the proposed 'amendment by reference' language of the 1922 Constitution be inserted in lieu of our existing 'revival by reference' and 'amendment by reference' provisions. The recommendation reads as follows: 'A bill expressly amending a law shall set forth completely the section or sections amended.' This provision would allow the General Assembly to continue the present practice of deleting language by techniques of lining through and bracketing, and of indicating new language by the technique of italicizing." 6 Record of Proceedings, Sixth Illinois Constitutional Convention 1387-1388 (hereinafter cited as Proceedings).

A motion to delete this provision was made upon the floor of the Convention and the purpose of the Committee in submitting it was reiterated and amplified during the debate which preceded the vote rejecting the amendment. 4 Proceedings 2878-2881.

That Public Act 77—1818 is an attempt to amend numerous statutes "simply by referring to" them clearly appears from section 2 of the Act, which provides: "The Acts referred to generally in section 1 are those Acts specifically listed in sections 2.01 through 2.30." Nowhere does Public Act 77—1818 set forth the relevant provisions of any of the 30 acts to which it makes reference. It simply recites their titles.

The argument of the appellants centers upon the word "expressly." They say that "since the Act did not expressly amend any existing state laws, the provisions of section 8(d) of Article IV of the Constitution of 1970 are not applicable." And they urge: "It appears on the face of the Act that there is no *express* amendment of any law. Indeed, if there is any amendment at all, it is by implication only." We are unable to accept this contention. The effect that Public Act 77—1818 was designed to have upon the 30 statutes to which it makes reference was not left to implication. It was expressly stated not only for the present, but for the future. By its reference to the 30 statutes "as now enacted or hereafter amended," Public

Act 77—1818 attempted to subtract from some of them existing provisions authorizing concurrent municipal regulations. (See Ill. Rev. Stat. 1973, ch. 111½, par. 73.29 (funeral directors, undertaking establishments); Ill. Rev. Stat. 1971, ch. 114½, par. 17 (real estate brokers); Ill. Rev. Stat. 1973, ch. 16¾, par. 14.96 (barbers and barber shops).) And Public Act 77—1818 attempted to add to each of them a provision that it may not in the future be amended to grant municipalities concurrent authority to regulate. We need not now consider the ultimate legal impact of the words "or hereafter amended" upon the authority of a future General Assembly to amend any statute of the State in any manner that it sees fit. It is enough that the purpose to alter the present and the future scope of each of the statutes to which reference is made in sections 2.01 to 2.30 is expressly stated in Public Act 77—1818, and it therefore violates section 8(d) of article IV of the Constitution.

Section 8(d) of article IV of the Constitution also provides: "Bills, except bills for appropriations and for the codification, revision or rearrangement of laws, shall be confined to one subject." It has been pointed out that "The one-subject rule was designated to prevent the abuses which inhered in an act containing heterogeneous matters. The primary purposes of the requirement that the body [of an act—as distinguished from its title] shall not embrace more than one subject is to prevent "log-rolling," to preclude the attachment of legislative "riders," and to insure an orderly legislative procedure." (Notes and Recent Decisions, State Statutes: The One-Subject Rule Under the 1970 Constitution, 6 John Marshall J. 359, 359-360.) These considerations apply with peculiar force to the present bill, which is an assault upon municipal powers of regulation by a combination of groups of businesses subject to those regulations. In support of his description of the basic purposes of the one-subject rule, the author

quoted the following passage from *People ex rel. Drake v. Mahaney* (1865), 13 Mich. 481, 494-5:

> "The history and purpose of this constitutional provision are too well understood to require any elucidation at our hands. The practice of bringing together into one bill subjects diverse in their nature, and having no necessary connection, with a view to combine in their favor the advocates of all, and thus secure the passage of several measures, no one of which could succeed upon its own merits, was one both corruptive of the legislator and dangerous to the State."

The validity of Public Act 77—1818 is also attacked upon the ground that it contains more than one subject. In response, it is contended on behalf of the Department of Education and Registration that the Act is a "codification" and therefore is exempted from the single-subject requirement of section 8(d). We think it is apparent from the face of the bill that it is not and does not purport to be a "codification, revision or rearrangement" within the meaning of the constitutional provision.

Clearly the Act does not follow any legislative pattern heretofore employed in Illinois. In discussing the impact of the Act upon home-rule units, the *amicus* brief of the American Life Insurance Association points out that the transcript should not be resorted to in determining the proper construction of the statute, saying: "For the transcripts here show legislators expressing contradictory opinions as to what the proposed bill meant, admitting that they were confused, and stating that the interpretation urged by appellees would and would not accomplish the purpose of the groups advocating the legislation."

The confusion generated by the bill appears to derive from its unique form. In *Turner v. Wright* (1957), 11 Ill.2d 161, we dealt, apparently for the first time, with a bill that contained its own new substantive provisions and also amended another act. We said, "The legislative technique

here used invites close scrutiny. It has an inherent potential that, if not closely confined, would trespass upon the objectives of the constitution." (11 Ill.2d at 173.) The present bill does not itself contain any substantive provision for the regulation of any of the subjects which it purports to preempt. Instead, it refers to 30 separate acts of the General Assembly, each dealing with a separate subject—the licensing and regulation of a particular profession, vocation or occupation. Some of those acts provide for regulation beyond registration and licensing and some do not.

These differences in the content of the statutes that are referred to in Public Act 77—1818, and in the occupations that are regulated by those statutes, have prompted the appellants to advance several possible constructions both of the Act and of the home-rule provisions of the Constitution. It could be concluded, they assert, that the Act is intended to preempt all municipal regulations including, for example, zoning and building ordinances. Alternatively, they say that the court could determine that "only those *specific subjects* which the State 'exercises' or 'performs' " are preempted. The *amicus* insurance association suggests: "The State's failure to go farther than it does may manifest an intent that there be no broader regulation. Or it may not." And in support of the interpretation that the Act preempts "the types of regulation embodied in the State registration and licensing laws" it is said:

"*** The words 'power or function' in Section 6(g) and (h) need not be construed as invariably including or not including all aspects of an industry some features of which the State is regulating.

* * *

*** The phrase 'the power to regulate any profession, vocation or occupation for which licensing or registration is required' can accomplish this purpose if limited, as it well can be in complete context, to the kinds of regulation embodied in the State licensing and registra-

tion statutes. Such an interpretation of the Act would be unlikely to affect its application to most of the occupations which it enumerates, and it would eliminate the question as to whether local fair housing and anti-blockbusting ordinances were superseded. If it is thought that to construe the Act more broadly might present a question as to its constitutionality, the suggested interpretation would also comport with the principle that laws should be construed so as to avoid not merely unconstitutionality but doubts as to constitutionality.

\* \* \*

The same result would be achieved if the Act were held constitutional as applied to those local ordinances which were clearly exercises of the same powers exercised by the State statutes referred to in the Act—and this would cover most of the subjects which would presently be preempted."

These varying interpretations of the Act, apparently considered desirable or necessary in order to avoid the requirements of the home-rule provisions of the Constitution, contradict the language of the Act which says that "the power to regulate" the occupations mentioned in the 30 listed statutes "shall be exercised exclusively by the State and may not be exercised by any unit of local government, including home rule units." The confusion that appears in the debates in the General Assembly, taken in conjunction with the suggestion that the meaning of the "exclusive" exercise of power may vary from one of those 30 statutes to another, demonstrates, in our opinion, that each of the regulated professions, vocations or occupations is a separate subject.

This conclusion is bolstered by the subsequent legislative action with respect to real estate brokers and salesmen. Public Act 78—883, effective October 1, 1973 (Ill. Rev. Stat. 1973, ch. 114½, pars. 101-123), totally repealed the 1921 act relating to the registration and regulation of real estate brokers and real estate salesmen which was referred to in section 2.15 of Public Act

77—1818. The new act contains no provision prohibiting municipal regulation of those occupations and therefore there is no longer such a prohibition.

For the reasons stated, we hold that Public Act 77—1818 is invalid because it violates the provisions of the Constitution of 1970 which require that "[a] bill expressly amending a law shall set forth completely the sections amended," and that "[b] ills *** shall be confined to one subject."

The judgments of the circuit court of Cook County are affirmed.

*Judgments affirmed.*