722 N.E.2d 1102 (1999)
188 Ill.2d 500
243 Ill.Dec. 33
The PEOPLE of the State of Illinois, Appellant,
v.
Jessica WOOTERS, Appellee.
No. 83595.
Supreme Court of Illinois.
November 18, 1999.
*1104 Gerry R. Arnold, State's Attorneys Appellate Prosecutor, Mt. Vernon, Jim Ryan, Attorney General, Criminal Appeals Div., Chicago, State's Attorney Marion County, Salem, for the People.
E. Joyce Randolph, Asst. State Appellate Defender, Mt. Vernon, for Jessica Wooters.
Justice McMORROW delivered the opinion of the court:
Following a bench trial, the circuit court of Marion County convicted defendant, Jessica Wooters, of murdering her infant son. 720 ILCS 5/9-1(a)(2) (West 1996). Section 5-8-1(a)(1)(c)(ii) of the Unified Code of Corrections (730 ILCS 5/5-8-1(a)(1)(c)(ii) (West 1998)) prescribes mandatory life imprisonment for any person 17 years or older convicted of murdering a child less than 12 years old, provided the offender is not sentenced to death.
The State did not seek the death penalty for defendant, and the circuit court refused to sentence defendant to a life term in prison. The circuit court ruled that section 5-8-1(a)(1)(c)(ii) violates article I, section 11, of the Illinois Constitution of 1970 (Ill. Const.1970, art. I, § 11), because section 5-8-1(a)(1)(c)(ii) prevents the sentencing court from assessing any evidence that would mitigate against a term of natural life in prison. The court subsequently sentenced defendant to 25 years' imprisonment. The State appealed directly to this court. 134 Ill.2d R. 603. We agree with the legislature's determination that the murder of a child under age 12 by an individual age 17 or older (730 ILCS 5/5-8-1(a)(1)(c)(ii) (West 1998)) warrants life imprisonment. However, we affirm the 25-year sentence imposed by the circuit court on the sole basis that section 5-8-1(a)(1)(c)(ii) violates the single subject clause of the Illinois Constitution. Ill. Const.1970, art. IV, § 8.

BACKGROUND
In 1996, the State of Illinois charged defendant Jessica Wooters by information with first degree murder. 720 ILCS 5/9-1(a)(2) (West 1996). The State alleged that defendant, who was then 20 years old, struck her 19-day-old son in the head, "knowing the act created a strong probability of death or great bodily harm, thereby causing [his] death."
Before trial, defendant twice moved the circuit court to declare section 5-8-1(a)(1)(c)(ii) of the Unified Code of Corrections unconstitutional. 730 ILCS 5/5-8-1(a)(1)(c)(ii) (West 1998). In pertinent part, section 5-8-1(a)(1)(c)(ii) states:
"(A) Except as otherwise provided in the statute defining the offense, a sentence *1105 of imprisonment for a felony shall be a determinate sentence set by the court under this Section, according to the following limitations:
(1) for first degree murder,
* * * * * *
(c) the court shall sentence the defendant to a term of natural life imprisonment when the death penalty is not imposed if the defendant,
* * * * * *
(ii) is a person who, at the time of the commission of the murder, had attained the age of 17 or more and is found guilty of murdering an individual under 12 years of age; or, irrespective of the defendant's age at the time of the commission of the offense, is found guilty of murdering more than one victim[.]" 730 ILCS 5/5-8-1(a)(1)(c)(ii) (West 1998).
Defendant argued that section 5-8-1(a)(1)(c)(ii): violated the eighth amendment to the United States Constitution (U.S. Const., amend. VIII); transgressed the constitutionally mandated separation of powers between the legislature and the judiciary (Ill. Const.1970, art. II, § 1); and denied defendant due process and equal protection of the laws (U.S. Const., amends. V, XIV; Ill. Const.1970, art. I, § 2). In addition, defendant maintained that section 5-8-1(a)(1)(c)(ii) violated article I, section 11, of the Illinois Constitution. Ill. Const.1970, art. I, § 11. Article I, section 11, provides that penalties must be established "according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const.1970, art. I, § 11. According to defendant, the mandatory life sentence in section 5-8-1(a)(1)(c)(ii) was a "disproportionate" penalty that ignored the directive set forth in article I, section 11, to establish penalties with the aim of returning an offender to the community at large. Defendant's motions were denied.
Following a bench trial, the court found defendant guilty as charged. The court also allowed defendant leave to file additional authority concerning the constitutionality of section 5-8-1(a)(1)(c)(ii).
At a subsequent hearing, the circuit court ruled that the life sentence prescribed by section 5-8-1(a)(1)(c)(ii) violated article I, section 11. The court opined that the General Assembly enacted section 5-8-1(a)(1)(c)(ii) without regard to the "objective of restoring the offender to useful citizenship," since a mandatory life sentence deprives an offender of any chance to rejoin society. The court found no evidence in the legislative history that the General Assembly contemplated the rehabilitative potential of an offender sentenced pursuant to section 5-8-1(a)(1)(c)(ii). Also, the statute interfered with the judiciary's obligation, when sentencing a criminal defendant, to consider mitigating evidence and the defendant's rehabilitative potential. The court concluded that sentencing the defendant in this case to life imprisonment "strikes [the court] as inherently unfair." Finding section 5-8-1(a)(1)(c)(ii) unconstitutional, the court conducted a sentencing hearing and sentenced defendant to 25 years' imprisonment.
The State filed the instant appeal pursuant to Illinois Supreme Court Rule 603 (134 Ill.2d R. 603).

STANDARD OF REVIEW
The court reviews de novo a lower court order declaring a statute unconstitutional. Wilson v. Department of Revenue, 169 Ill.2d 306, 310, 214 Ill.Dec. 849, 662 N.E.2d 415 (1996).

ANALYSIS

A. Whether Section 5-8-1(a)(1)(c)(ii) Violates Article I, Section 11, of the Illinois Constitution
Before this court, the State argues that the enactment of section 5-8-1(a)(1)(c)(ii) lies well within the General Assembly's authority to define criminal conduct and to *1106 prescribe suitable punishment for that conduct. Defendant counters that by mandating a life prison sentence for adult murderers of children under 12 years of age, the legislature violated its obligation to set penalties "with the objective of restoring the offender to useful citizenship." Ill. Const.1970, art. I, § 11.
We begin our analysis with the presumption that all legislative enactments are constitutional. People v. Dunigan, 165 Ill.2d 235, 244, 209 Ill.Dec. 53, 650 N.E.2d 1026 (1995); see also People v. Wages, 261 Ill.App.3d 576, 588, 199 Ill.Dec. 59, 633 N.E.2d 855 (1994). Defendant bears the burden of overcoming that presumption. Dunigan, 165 Ill.2d at 244, 209 Ill.Dec. 53, 650 N.E.2d 1026.
In People v. Taylor, 102 Ill.2d 201, 80 Ill.Dec. 76, 464 N.E.2d 1059 (1984), and People v. Dunigan, 165 Ill.2d 235, 209 Ill.Dec. 53, 650 N.E.2d 1026 (1995), this court held that mandatory life imprisonment can be harmonized with article I, section 11. In Taylor, the circuit court ordered defendants Andre and Dorothy Taylor to serve life sentences after the defendants' convictions for the murder of two individuals. The murders occurred during an armed robbery executed by the defendants. The circuit court sentenced the defendants pursuant to the version of section 5-8-1 then in existence, which required life imprisonment for anyone guilty of murdering more than one victim. Ill. Rev.Stat.1981, ch. 38, par. 1005-8-1(a)(1)(c).
The appellate court reversed, holding that the statute usurped the trial judge's responsibility to weigh mitigating evidence and any evidence of rehabilitative potential when sentencing a defendant. According to the appellate court, the trial court's obligation to consider these matters arose both from the prescriptions of article I, section 11, and from the separation of powers clause, embodied in article II, section 1, of the state constitution. Ill. Const. 1970, art. II, § 1.
This court reversed the appellate court and reinstated defendants' life sentences. Taylor, 102 Ill.2d at 210, 80 Ill.Dec. 76, 464 N.E.2d 1059. Preliminarily, the Taylor court noted that the power to define criminal conduct and to determine the appropriate punishment for that conduct rests with the legislature. Taylor, 102 Ill.2d at 205, 80 Ill.Dec. 76, 464 N.E.2d 1059; see also People v. Hickman, 163 Ill.2d 250, 259, 206 Ill.Dec. 94, 644 N.E.2d 1147 (1994); People ex rel. Carey v. Chrastka, 83 Ill.2d 67, 79, 46 Ill.Dec. 156, 413 N.E.2d 1269 (1980); Wages, 261 Ill.App.3d at 588, 199 Ill.Dec. 59, 633 N.E.2d 855. Moreover, although the dictates of article I, section 11, apply to the judiciary, they apply with equal force to the legislature, albeit with a different effect.[1]Taylor, 102 Ill.2d at 205-06, 80 Ill.Dec. 76, 464 N.E.2d 1059.
As this court explained in People v. Taylor, 102 Ill.2d at 205-06, 80 Ill.Dec. 76, 464 N.E.2d 1059:
"Section 11 is directed to the legislature in its function of declaring what conduct is criminal and the penalties for the conduct. It is directed to the judiciary in that it requires courts not to abuse discretion in imposing sentences within the framework set by the legislature. [Citations.]"
The Taylor court observed that article I, section 11, bound the General Assembly to the twin objectives of "restoring an offender to useful citizenship and of providing a penalty according to the seriousness of the offense." Taylor, 102 Ill.2d at 206, 80 Ill.Dec. 76, 464 N.E.2d 1059. Critically, however, the Taylor court also held that "there is no indication that the possibility of rehabilitating an offender was to be *1107 given greater weight and consideration than the seriousness of the offense in determining a proper penalty." Taylor, 102 Ill.2d at 206, 80 Ill.Dec. 76, 464 N.E.2d 1059.
The court concluded that, in enacting section 5-8-1, the legislature fulfilled its duty to consider an offender's rehabilitative potential. Taylor, 102 Ill.2d at 206, 80 Ill.Dec. 76, 464 N.E.2d 1059. Where, as in Taylor, no set of mitigating circumstances could suggest a more lenient sentence, life imprisonment is consonant with the constitution. Taylor, 102 Ill.2d at 206, 80 Ill. Dec. 76, 464 N.E.2d 1059.
Similarly, in People v. Dunigan, 165 Ill.2d 235, 209 Ill.Dec. 53, 650 N.E.2d 1026 (1995), the trial court imposed a life sentence on the defendant Paul Dunigan, following the defendant's conviction for criminal sexual assault. The defendant's conviction in Dunigan, plus the defendant's previous two convictions for felony offenses, rendered defendant a "habitual criminal" under Illinois law, and thus subject to a mandatory life sentence in prison. Ill.Rev.Stat.1989, ch. 38, par. 33B-1.
The defendant argued that, among other things, article I, section 11, was necessarily abridged by the habitual criminal statute's requirement of a life sentence. Nonetheless, the Dunigan court affirmed the legislature's authority to "determine the nature and extent of criminal sentences." Dunigan, 165 Ill.2d at 244, 209 Ill.Dec. 53, 650 N.E.2d 1026. Additionally, this court found that the General Assembly "obviously" considered both the seriousness of the conduct and the offender's rehabilitative potential when enacting the habitual offender statute. Dunigan, 165 Ill.2d at 246, 209 Ill.Dec. 53, 650 N.E.2d 1026. Under that law, a defendant qualifies for a life prison sentence only after defendant has been convicted of a felony on two prior occasions.
"[D]efendants are given the opportunity, when sentenced for their first two serious felony offenses, to present mitigating evidence and to demonstrate their rehabilitative potential. The [Habitual Criminal] Act may be invoked only after a defendant has twice demonstrated that conviction and imprisonment do not deter him from a life of crime." Dunigan, 165 Ill.2d at 246, 209 Ill.Dec. 53, 650 N.E.2d 1026.
In the instant appeal, defendant attempts to distinguish Dunigan and Taylor by noting that, in each of those cases, the defendants' repeated criminal acts justified sentences that precluded reintegration into the general population. In Taylor, defendant argues, the defendants committed multiple murders. In Dunigan, the defendant was twice convicted of a felony before the events in Dunigan occurred. Defendant concludes that the innate recidivism displayed by the defendants in Dunigan and Taylor cannot be attributed to a first-time murderer like the defendant in this case. Therefore, the General Assembly lacked any basis to assume an offender subject to section 5-8-1(a)(1)(c)(ii) could not be restored to useful citizenship.
We find defendant's argument unpersuasive. The two murders committed by the defendants in Taylor occurred virtually simultaneously (Taylor, 102 Ill.2d at 204, 80 Ill.Dec. 76, 464 N.E.2d 1059), so that the Taylor defendants received life sentences for a single, murderous episode, no more indicative of habitual criminal conduct than the events of the case at bar. Further, the frequency of criminal conduct cannot be the only factor that determines whether an offender is capable of rehabilitation. The constitution directs the General Assembly to consider the "seriousness," or nature, of the offense. Ill. Const.1970, art. I, § 11. Accordingly, it is just as fitting for the General Assembly to craft penalties based on the nature of the crime committed as it is to rely on the defendant's criminal history.
The nature of the crime punished pursuant to section 5-8-1(a)(1)(c)(ii) is, in the words of one legislator, "especially heinous." 89th Ill. Gen. Assem., House Proceedings, *1108 May 21, 1995, at 153 (statements of Representative Winkel). By definition, the crime involves an individual not only capable of murder, but also capable of taking the life of one of the most vulnerable members of our society. Therefore, the General Assembly could conclude that no mitigating evidence would justify a sentence less severe than life imprisonment for an offender guilty of this crime.
Further, this state has traditionally exhibited an acute interest in the well-being of minors. See, e.g., People v. Wheeler, 299 Ill.App.3d 245, 254, 233 Ill.Dec. 535, 701 N.E.2d 178 (1998); see also American Federation of State, County & Municipal Employees v. Department of Central Management Services, 173 Ill.2d 299, 311, 219 Ill.Dec. 501, 671 N.E.2d 668 (1996) ("the welfare and protection of minors has always been considered one of the State's most fundamental interests"); see also People v. Reed, 148 Ill.2d 1, 12, 169 Ill.Dec. 282, 591 N.E.2d 455 (1992); Regenold v. Baby Fold, Inc., 68 Ill.2d 419, 437, 12 Ill.Dec. 151, 369 N.E.2d 858 (1977). To impose life-time imprisonment on an adult convicted of murdering a child is commensurate with the state's dedication to protecting children. This special concern for the safety of minors supports the General Assembly's determination that no mitigating evidence could justify returning an adult offender to society after murdering a young child. See Wheeler, 299 Ill.App.3d at 254, 233 Ill.Dec. 535, 701 N.E.2d 178 (section 5-8-1(a)(1)(c)(ii) does not violate article I, section 11: "The legislature validly could have made the same determination in regard to a single murder of a young child as was made in regard to a repeat murderer [in Taylor]").
We turn last to the circuit court's conclusion that the General Assembly never attempted to ensure that section 5-8-1(a)(1)(c)(ii) would be constitutionally compatible with article I, section 11. The circuit court grounded its finding on the absence of any debate concerning article I, section 11, in the legislative history of section 5-8-1(a)(1)(c)(ii). Silence in the legislative record is not dispositive of the General Assembly's intent. As noted previously, we must assume that the legislature meant to fulfill its constitutional obligations. Dunigan, 165 Ill.2d at 244, 209 Ill.Dec. 53, 650 N.E.2d 1026. Without more, mere silence by the General Assembly regarding the rehabilitative potential of adults who kill minors fails to overcome the presumptive validity of the legislation.
The General Assembly enacted section 5-8-1(a)(1)(c)(ii) following this court's decisions in Taylor and Dunigan. "Where statutes are enacted after judicial opinions are published, it must be presumed that the legislature acted with knowledge of the prevailing case law." Hickman, 163 Ill.2d at 262, 206 Ill.Dec. 94, 644 N.E.2d 1147. Therefore, we hold that section 5-8-1(a)(1)(c)(ii) complies with article I, section 11, of the Illinois Constitution, and suffers from no constitutional infirmity.

B. Whether Section 5-8-1(a)(1)(c)(ii) Violates Article IV, Section 8, of the Illinois Constitution
On appeal, defendant suggests for the first time that section 5-8-1(a)(1)(c)(ii), as amended, also violates the "single subject" rule found in article IV, section 8, of the Illinois Constitution (Ill. Const.1970, art. IV, § 8). The State concedes that, although defendant neglected to raise this issue before the circuit court, the constitutional dimension of the question permits this court to address defendant's argument. People v. Bryant, 128 Ill.2d 448, 454, 132 Ill.Dec. 415, 539 N.E.2d 1221 (1989).
Section 5-8-1(a)(1)(c)(ii) became law as 1 of 10 sections contained in Public Act 89-203 (Pub. Act 89-203 (eff. July 21, 1995)). Defendant maintains that the various sections of Public Act 89-203 lack a logical and natural relationship to any single subject, and thus Public Act 89-203 transgresses the single subject rule. Ill. Const. 1970, art. IV, § 8. The State's response is three-pronged: first, that the 10 sections of Public Act 89-203 relate to a single *1109 subject and, therefore, no constitutional breach has occurred; second, that there is no violation of the single subject rule because Public Act 89-203 adheres to the principles animating the single subject provision; and third, that the "codification" rule bars application of the single subject clause in this case.
Article IV, section 8, provides in relevant part:
"Bills, except bills for appropriations and for the codification, revision or rearrangement of laws, shall be confined to one subject." Ill. Const.1970, art. IV, § 8.
In 1934, this court articulated the basic test that guides our interpretation of the single subject rule:
"The term `subject,' in a constitutional provision of this character, is given a comprehensive meaning. It may be as broad as the legislature chooses to make it so that a single act may include all matters which have a logical or natural connection. Provisions of an act which relate, directly or indirectly, to its general subject, do not render the act vulnerable to the objection that it embraces more than one subject. Since an act may contain all matters germane to its general subject, it may include the means reasonably necessary or appropriate to the accomplishment of its purpose." People ex rel. City of Chicago v. Board of County Commissioners, 355 Ill. 244, 247, 189 N.E. 26 (1934).
The court held further that the single subject clause of the constitution places no limit on the comprehensiveness of the subject matter encompassed by legislation, and that only statutory provisions "that can by no fair intendment be considered as having any legitimate relation to each other" will breach the single subject rule. City of Chicago, 355 Ill. 244, 189 N.E. 26; see also Arangold Corp. v. Zehnder, 187 Ill.2d 341, 351-52, 240 Ill.Dec. 710, 718 N.E.2d 191 (1999); People v. Reedy, 186 Ill.2d 1, 9, 237 Ill.Dec. 74, 708 N.E.2d 1114 (1999); Johnson v. Edgar, 176 Ill.2d 499, 515, 224 Ill.Dec. 1, 680 N.E.2d 1372 (1997); People ex rel. Ogilvie v. Lewis, 49 Ill.2d 476, 487, 274 N.E.2d 87 (1971); People ex rel. Gutknecht v. City of Chicago, 414 Ill. 600, 607-08, 111 N.E.2d 626 (1953).
In the case at bar, the legislature entitled Public Act 89-203, "An Act in relation to crime" (Pub. Act 89-203 (eff. July 21, 1995)), and indeed, several sections of the Act do relate to our criminal code. For example, included in Public Act 89-203 is an amendment to section 32-10 of the Criminal Code of 1961 which expanded the circumstances under which a person charged with a felony while on bail must appear in court for bail to be reset. 720 ILCS 5/32-10 (West 1996). Public Act 89-203 also amended section 11-6 of the Criminal Code to include a definition of "solicits" for the crime of indecent solicitation of a child. 720 ILCS 5/11-6 (West 1996). The amended section 11-6.5 of the Criminal Code added a definition of "arranges" to the statute outlawing indecent solicitation of an adult. 720 ILCS 5/11-6.5(c) (West 1996).
Two sections of Public Act 89-203 amended the Unified Code of Corrections by adding provisions requiring the payment of restitution following conviction in certain domestic battery cases (730 ILCS 5/5-5-6, 5-6-3.1 (West 1996)) and by amending section 5-8-1(a)(1)(c)(ii), the subject of the instant appeal. The enactment also amended section 6-208.1 of the Illinois Vehicle Code to alter the conditions under which an individual convicted of driving while intoxicated could receive a temporary driving permit. 625 ILCS 5/6-208.1 (West 1996). Public Act 89-203 added terms of imprisonment as punishment for persons arrested for driving under the influence while accompanied by an individual under the age of 16. 625 ILCS 5/11-501 (West 1996). In Public Act 89-203, the General Assembly also added section 5-1120 to the Counties Code, thereby empowering counties to establish and fund programs to reduce, prevent or control *1110 juvenile delinquency. 55 ILCS 5/5-1120 (West 1996). Each of these amendments may logically be said to be related to crime, the subject of the Act.
One section, however, is unrelated to crime. Public Act 89-203 amended sections 15-1508 and 15-1701 of the Illinois Mortgage Foreclosure Law, which is codified in the Code of Civil Procedure. 735 ILCS 5/15-1508, 15-1701 (West 1996). The amendment to section 15-1508 allows residents of foreclosed property to be removed from the premises only if the residents are personally named in the relevant complaint or petition. The amendment to section 15-1701 guarantees adequate notice of a change of ownership for individuals in possession of real estate, but who were not parties to foreclosure proceedings on that property.
We agree that the passages amending the Criminal Code bear a logical and natural connection to the single subject of "crime." Inasmuch as the punishments set forth in the amended sections of the Code of Corrections and the Vehicle Code arise from the commission of crimes, the State can plausibly argue that these sections are also sufficiently related to the subject of "crime." Juvenile delinquency is a recognized root of crime. The amended section of the Counties Code enabling county governments to establish programs designed to prevent or diminish juvenile delinquency also passes constitutional muster as part of the "crime" bill embodied in Public Act 89-203.
By contrast, the amendments to the Code of Civil Procedure cannot be harmonized with the other provisions of Public Act 89-203. Amendments to sections 15-1508 and 15-1701 of the civil procedure code are distinctly noncriminal in nature, in that they change the means by which renters and other nonowners of real property are notified of a foreclosure. Legislative history incorporated into the State's brief indicates that the Legal Assistance Foundation of Chicago and members of the banking industry agreed to these amendments to correct "abuses" surrounding mortgage foreclosures. 89th Ill. Gen. Assem., Senate Proceedings, April 20, 1995, at 40 (statements of Senator Fitzgerald).
While we are mindful of our obligation to construe the single subject classification "broadly," we find nothing in Public Act 89-203 to suggest even a tenuous connection between sections 15-1508 and 15-1701 and the topic of "crime," let alone a "natural and logical" connection. Absent a natural, logical connection of all provisions of Public Act 89-203 to a single subject, the enactment is unconstitutional as violative of article IV, section 8. Arangold, 187 Ill.2d at 352, 354, 240 Ill.Dec. 710, 718 N.E.2d 191.
The State relies on Rembert v. Sheahan, 62 F.3d 937 (7th Cir.1995), in support of its argument that Public Act 89-203 complies with the Illinois Constitution. The State's reliance is misplaced. In Rembert, tenants of mortgaged premises foreclosed pursuant to the Illinois Mortgage Foreclosure Law (735 ILCS 5/15-1102 et seq. (West 1996)) sued to enjoin the Cook County sheriff's department from enforcing orders of possession and eviction notices in which tenants were not individually identified. The Seventh Circuit Court of Appeals never reached the due process claims raised by the tenants; instead, the court remanded the matter to the district court to determine whether amendments to sections 15-1508 and 15-1701 of the Foreclosure Law rendered the controversy moot. Rembert, 62 F.3d at 942-43.
The State maintains that the practices of the sheriff's office described in Rembert prompted the General Assembly to amend the Foreclosure Law to include the present versions of sections 15-1508 and 15-1701. The State further contends that the sheriff's participation in evicting residents from foreclosed property connects sections 15-1508 and 15-1701 to the remaining sections of Public Act 89-203. The State may be correct that the Rembert litigation *1111 caused the Foreclosure Law to be amended. Regardless, the mere fact that the sheriff enforces orders of possession and notices of eviction does not transform sections 15-1508 and 15-1701 into legislation concerning "crime." Sections 15-1508 and 15-1701 bear no relation to the subject of crime: they relate only to procedures to be employed following the foreclosure of a mortgage. We conclude that, contrary to the State's interpretation of Rembert, the Rembert decision in fact demonstrates that the impetus to enact sections 15-1508 and 15-1701 flows from concerns unrelated to crime.
We note that, in Wheeler, 299 Ill.App.3d 245, 233 Ill.Dec. 535, 701 N.E.2d 178, our appellate court relied on Rembert to conclude that all sections of Public Act 89-203, including sections 15-1508 and 15-1701, related to "law enforcement" and therefore did not violate the single subject rule. Wheeler, 299 Ill.App.3d at 253, 233 Ill.Dec. 535, 701 N.E.2d 178. The Wheeler court quoted a footnote in Rembert describing the sheriff as "`an integral part of the State machinery that allows purchasers of mortgaged real estate to take possession of that real estate.'" Wheeler, 299 Ill. App.3d at 253, 233 Ill.Dec. 535, 701 N.E.2d 178, quoting Rembert, 62 F.3d at 941 n. 1. Continuing, the Wheeler court reasoned that "considering the focus this legislation [sections 15-1508 and 15-1701] place[] on the sheriff and his deputies, who are law enforcement officers, in regard to the services of notices and writs of possession only on properly designated parties to the foreclosure proceeding, we conclude this portion of Public Act 89-203 has `a natural and logical connection' to the rest of the act." Wheeler, 299 Ill.App.3d at 253-54, 233 Ill.Dec. 535, 701 N.E.2d 178.
Initially, we disagree that the legislature passed Public Act 89-203 as a "law enforcement"-related bill. The text of the legislation describes itself as related to "crime." Moreover, Representative Winkel, sponsor of the bill, described Public Act 89-203 as a "good, tough-on-crime-bill." 89th Ill. Gen. Assem., House Proceedings, May 21, 1995, at 164 (statements of Representative Winkel).
Additionally, Wheeler quoted Rembert out of context. The Rembert court only intended to rebut the sheriff's suggestion that the case was moot because "he is not responsible for the content of the order of possession." Rembert, 62 F.3d at 941 n. 1. The court of appeals dismissed the sheriff's argument as "scapegoating" and ruled that the sheriff's "integral" role in the machinery of foreclosure forced him to bear responsibility for procedures used to evict residents of foreclosed property. Rembert, 62 F.3d at 941 n. 1. Rembert neither directly nor indirectly indicated a link between the sheriff's office and the subjects of law enforcement or crime.
The State further argues that the amendments to the civil procedure code are related to "law enforcement" because sheriffs must serve and enforce eviction notices (citing 725 ILCS 5/107-16 (West 1996); 735 ILCS 5/2-202, 15-1107, 15-1502(c)(2) (West 1996)) in potentially violent settings. Again, we find no basis in the legislative record to conclude that the General Assembly drafted Public Act 89-203 as a law enforcement bill. The General Assembly unequivocally indicated that "crime" formed the core of Public Act 89-203's subject matter.
Assuming arguendo that Public Act 89-203 pertained to "law enforcement," the bill would still violate the single subject rule. Reduced to their essence, the amendments to sections 15-1508 and 15-1701 were drafted to correct procedural due process violations caused by a lack of specificity in orders of possession and eviction notices. See Rembert, 62 F.3d at 941; Wheeler, 299 Ill.App.3d 245, 233 Ill.Dec. 535, 701 N.E.2d 178. The fact that the sheriff's office may compose and serve eviction notices is, at best, incidental to the notice provisions altered by the amendments. We hold that sections 15-1508 and 15-1701, as embodied in Public Act 89-203, *1112 are unrelated to the subjects of "law enforcement" and "crime."
We find the present appeal analogous to our recent decision in People v. Reedy, 186 Ill.2d 1, 237 Ill.Dec. 74, 708 N.E.2d 1114 (1999). In Reedy, a bill originally drafted only to amend the insanity defense statute was gutted and became Public Act 89-404, which contained 10 different provisions. Public Act 89-404 embraced subjects as diverse as the burden of proof borne by a defendant asserting the insanity defense (720 ILCS 5/1-1 et seq. (West 1996)) and procedures required for the perfection and satisfaction of hospital liens (770 ILCS 35/0.01 et seq. (West 1996)). The State asserted that the diverse subjects that comprised Public Act 89-404 related to "`governmental matters which are the responsibility of the various county State's Attorneys.'" Reedy, 186 Ill.2d at 12, 237 Ill.Dec. 74, 708 N.E.2d 1114.
This court found that Public Act 89-404 violated the single subject rule. Reedy, 186 Ill.2d at 12, 237 Ill.Dec. 74, 708 N.E.2d 1114. We reasoned that, at a minimum, Public Act 89-404 encompassed two distinct subjects, the criminal justice system and hospital liens, and that "even the most liberal attempt to reconcile these * * * subjects [was] unavailing." Reedy, 186 Ill.2d at 12, 237 Ill.Dec. 74, 708 N.E.2d 1114. Though the State suggested that the separate sections of Public Act 89-404 were all related to "governmental matters," the category itself was so broad as to "strain[] credulity." Reedy, 186 Ill.2d at 12, 237 Ill.Dec. 74, 708 N.E.2d 1114. While the subject uniting the provisions of an enactment may be broad and comprehensive, it cannot be so vast as to eviscerate the very meaning of the term "subject." Reedy, 186 Ill.2d at 9, 237 Ill.Dec. 74, 708 N.E.2d 1114. A "subject" with imperceptible boundaries "render[s] the single subject clause of our constitution meaningless." Reedy, 186 Ill.2d at 12, 237 Ill.Dec. 74, 708 N.E.2d 1114.
In the matter before this court, we are unable to discern a single subject that could unite all sections of Public Act 89-203. As stated previously, the obvious intent of the amendments to rules governing notice of foreclosures is to ensure adequate notice to persons who were not parties to the foreclosure proceedings but might be affected by the results of those proceedings as occupants of the subject property. See Wheeler, 299 Ill.App.3d at 253, 233 Ill.Dec. 535, 701 N.E.2d 178. 89th Ill. Gen. Assem., Senate Proceedings, April 20, 1995, at 40 (statements of Senator Fitzgerald). Those amendments say nothing about law enforcement officers, crime, or the potential of violence. To attempt to link these sections of Public Act 89-203 to "crime" or "law enforcement" simply "strains credulity." Reedy, 186 Ill.2d at 12, 237 Ill.Dec. 74, 708 N.E.2d 1114.
Nonetheless, the State urges the court to find Public Act 89-203 constitutional because the enactment allegedly comports with the purpose animating the single subject clause. The drafters of the constitution included the single subject rule to prevent "log-rolling," or the practice of bundling unpopular legislation with more palatable bills, so that the well-received bills would carry the unpopular ones to passage. Johnson v. Edgar, 176 Ill.2d 499, 514-15, 224 Ill.Dec. 1, 680 N.E.2d 1372 (1997); Geja's Cafe v. Metropolitan Pier & Exposition Authority, 153 Ill.2d 239, 257-58, 180 Ill.Dec. 135, 606 N.E.2d 1212 (1992); Fuehrmeyer v. City of Chicago, 57 Ill.2d 193, 201-02, 311 N.E.2d 116 (1974).
"`The practice of bringing together into one bill subjects diverse in their nature, and having no necessary connection, with a view to combine in their favor the advocates of all, and thus secure the passage of several measures, no one of which could succeed upon its own merits, [is] one both corruptive of the legislator and dangerous to the State.'" Fuehrmeyer, 57 Ill.2d at 202, 311 N.E.2d 116, quoting People ex rel. Drake v. Mahaney, 13 Mich. 481, 494-95 (1865). *1113 Further, the single subject rule promotes an orderly legislative process. The task of receiving and debating a bill is simplified if the contents of the bill embrace only one subject. Johnson, 176 Ill.2d at 514-15, 224 Ill.Dec. 1, 680 N.E.2d 1372.
According to the State, each chamber of the General Assembly separately "considered" each of the provisions of Public Act 89-203. The State implies that none of the provisions of Public Act 89-203 had to "piggy back" on another provision to win approval, and that none of the concerns underpinning the single subject rule apply to the enactment of this legislation.
The State's assertions are somewhat misleading. Legislative records from the House of Representatives illustrate that the different sections of Public Act 89-203 received separate majority votes in the Senate, but not in the House. The House sponsor of Public Act 89-203 preceded his description of the Public Act's contents, then known as Senate Bill 838, with this statement: "Senate Bill 838 actually contains several Bills that have been rolled into it by amendment." 89th Ill. Gen. Assem., House Proceedings, May 21, 1995, at 145 (statements of Representative Winkel).[2] Debate concerning several provisions of Senate Bill 838 ensued. Critically, though, when the House voted to pass Senate Bill 838, it voted only as to the collective legislation, and not as to the individual amendments contained in the bill. 89th Ill. Gen. Assem., House Proceedings, May 21, 1995, at 164-65.
Contrary to the State's reading of the legislative history, we interpret it as an example of the very evil the single subject rule is intended to prevent. The House received the legislation as a single package, and thus, we cannot conclude that the representatives cast their votes in favor of each section of the bill. We cannot concur that Public Act 89-203 complied with the purpose of the single subject clause.
Moreover, this court rejected a similar argument raised by the State in Reedy, 186 Ill.2d at 15-16, 237 Ill.Dec. 74, 708 N.E.2d 1114. There, the State requested that the court apply a harmless error standard to the court's construction of Public Act 89-404, which this court held violated the single subject rule. Reedy, 186 Ill.2d at 15, 237 Ill.Dec. 74, 708 N.E.2d 1114. The State suggested that, because each of the individual sections of Public Act 89-404 "possessed the necessary support for individual passage, the purpose of the single subject rule prohibiting `log rolling' of unpopular measures was not implicated." Reedy, 186 Ill.2d at 15, 237 Ill.Dec. 74, 708 N.E.2d 1114.
The court responded in part:
"The State's argument simply lacks merit. The State ignores the previously emphasized purpose of the single subject rule that promotes orderly and informed legislative debate and enactment. Since the crux of single subject rule analysis concerns the interrelatedness of an act's provisions, the harm in passing discordant bills in one act without informed debate is obvious." Reedy, 186 Ill.2d at 15-16, 237 Ill.Dec. 74, 708 N.E.2d 1114.
Finally, the State urges the court to adopt the "codification" principle. Pursuant to this rule, the codification of a bill cures any constitutional infirmity in the title or subject matter of the bill. See State v. Mabry, 460 N.W.2d 472, 475 (Iowa 1990). This court has recently and unequivocally rejected the codification rule. Reedy, 186 Ill.2d at 13-14, 237 Ill.Dec. 74, 708 N.E.2d 1114. We find no need to consider that argument further.

CONCLUSION
For the reasons stated above, we hold that Public Act 89-203 violates the single subject clause of the Illinois Constitution *1114 (Ill. Const.1970, art. IV, § 8), and therefore, we affirm the judgment of the circuit court.
Affirmed.
Chief Justice FREEMAN, specially concurring:
I agree that this court must affirm the circuit court's ruling that section 5-8-1(a)(1)(c)(ii) of the Unified Code of Corrections (730 ILCS 5/5-8-1(a)(1)(c)(ii) (West 1998)), as amended by Public Act 89-203, is unconstitutional. I reach this conclusion because the statute was enacted in violation of the single subject clause of the Illinois Constitution. I, therefore, fully join in section B of the "Analysis" section in the opinion authored by Justice McMorrow. See 188 Ill.2d at 510-20, 243 Ill.Dec. at 39-44, 722 N.E.2d at 1108-1113. However, I do not join in section A of the "Analysis" (see 188 Ill.2d at 505-10, 243 Ill.Dec. at 36-39, 722 N.E.2d at 1105-1108), and I express no opinion as to the issues discussed therein.
Justices BILANDIC, HEIPLE and RATHJE join in this special concurrence.
Justice HEIPLE, also specially concurring:
I agree with Justice McMorrow's conclusion that Public Act 89-203 was passed in violation of the single-subject clause of the Illinois Constitution. Ill. Const.1970, art. IV, § 8. Because the court today strikes down this Act under the single subject clause, it is entirely inappropriate for the court to render an opinion on the constitutionality of section 5-8-1(a)(1)(c)(ii) of the Unified Code of Corrections under article I, section 11 of the Illinois Constitution of 1970. Ill. Const.1970, art. I, § 11. I agree with Justices Rathje and Bilandic and Chief Justice Freeman that a majority of this court today expresses no opinion as to the issues discussed in section A of Justice McMorrow's opinion. Section A of that opinion has failed to gain the approval of a majority of the court and therefore does not constitute the law of Illinois.
Justice RATHJE joins in this special concurrence.
Justice RATHJE, also specially concurring:
Like Chief Justice Freeman and Justices Bilandic and Heiple, I join in only part B of Justice McMorrow's decision. When an act is held unconstitutional in its entirety, it is void ab initio; the state of the law is as if the act had never been passed. See People v. Gersch, 135 Ill.2d 384, 399, 142 Ill.Dec. 767, 553 N.E.2d 281 (1990); see also People v. Reedy, 186 Ill.2d 1, 237 Ill.Dec. 74, 708 N.E.2d 1114 (1999). Thus, once we determine that the public act creating the statute is invalid in its entirety, we have nothing more to review. Addressing the constitutionality of the statute before addressing the single subject violation in no way changes this simple truth. Justice McMorrow's substantive ruling is that Public Act 89-203 was passed in violation of the single subject clause; the remainder of the opinion is dicta and without any legal effect.
Having said that, I must point out that today this court sets a dangerous precedent. For reasons never explained and wholly unknown to me, this court has elected to release as the court's "judgment" a position that garners only three votes, when four members of this court share an opposing viewpoint. I, Chief Justice Freeman, and Justices Bilandic and Heiple believe that Public Act 89-203 violates the single subject clause and that the court's analysis should end there. Nevertheless, four members of the court voted to endorse Justice McMorrow's approach, undoubtedly as a means of assuring the legislature that section 5-8-1(a)(1)(c)(ii) of the Unified Code of Corrections (730 ILCS 5/5-8-1(a)(1)(c)(ii) (West 1998)) is constitutionally valid. Until today, this court has "decline[d] to engage in speculative analysis or to render an advisory opinion * * * where, as in the instant case, such analysis *1115 or opinion is not necessary for the disposition of the cause." Best v. Taylor Machine Works, 179 Ill.2d 367, 470, 228 Ill. Dec. 636, 689 N.E.2d 1057 (McMorrow, J., writing). Apparently, the rules have changed.
Justice HEIPLE joins in this special concurrence.
NOTES
[1] The judiciary's discretion in fashioning a criminal sentence extends only as far as the parameters of the sentencing statute permit. The sentencing judge cannot impose a penalty not otherwise allowed by the sentencing statute in question. See People ex rel. Daley v. Strayhorn, 119 Ill.2d 331, 336, 116 Ill.Dec. 226, 518 N.E.2d 1047 (1988); Wages, 261 Ill.App.3d at 588, 199 Ill.Dec. 59, 633 N.E.2d 855.
[2] At the close of the House debates, Representative Winkel stated that the bill "incorporates a broad number of different areas of the law." 89th Ill. Gen. Assem., House Proceedings, May 21, 1995, at 164 (statements of Representative Winkel).