NOTICE

Decision filed 06/29/15. The text of this decision may be changed or corrected prior to the filing of a Peti ion for Rehearing or the disposition of the same.

2015 IL App (5th) 120371

NO. 5-12-0371

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 05-CF-2092 |
| | ) | |
| LEE CRUTCHFIELD, | ) | Honorable |
| | ) | Brian Babka, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE GOLDENHERSH delivered the judgment of the court, with opinion.
Justices Welch and Stewart concurred in the judgment and opinion.

**OPINION**

¶ 1    This direct appeal is taken from the trial court's final judgment of conviction of

defendant, Lee Crutchfield, in a criminal case in which defendant was sentenced to

natural life in prison after a jury trial found him guilty of first-degree murder.  Defendant

raises two issues on appeal.  Defendant first alleges the trial court erred when it failed to

appoint counsel to investigate his claims of ineffective assistance of counsel.  The second

issue defendant raises alleges resentencing is required because the mandatory life

sentence provision pursuant to section 5-8-1(a)(1)(c)(ii) of the Unified Code of

Corrections (730 ILCS 5/5-8-1(a)(1)(c)(ii) (West 2010)) that the trial judge applied has

1

been struck down by the Illinois Supreme Court.

¶ 2    For the following reasons, we affirm the judgment of the trial court concerning defendant's ineffective assistance of counsel claims and remand to the trial court with directions to sentence defendant without applying the mandatory life sentence provision in section 5-8-1(a)(1)(c)(ii) of the Unified Code of Corrections (730 ILCS 5/5-8-1(a)(1)(c)(ii) (West 2010)).

¶ 3                                    BACKGROUND

¶ 4    Defendant, Lee Crutchfield, was sentenced to natural life in prison on August 21, 2012, after a jury trial found him guilty of first-degree murder in the death of Ryon Smith. The relevant facts to this appeal are as follows.

¶ 5    On December 25, 2005, at approximately 6:43 p.m., the body of 6-year-old Ryon Smith (victim) was found by authorities and medical responders in the house in which he had resided with his mother Starr Lohman, his 22-month-old brother, and defendant since October 2005. Defendant was Lohman's 32-year-old boyfriend at the time.

¶ 6    Officer Larry Flinn responded to a call that night regarding an unresponsive child at 1311 Upper Cahokia Road. Flinn arrived at the residence around the same time as the Medstar Ambulance. Lohman directed Flinn to the bedroom where the victim was lying unresponsive on the floor. Flinn testified in court that the victim's body looked badly beaten and bruised. The victim's body had lacerations and blood on his face, and had bruises on his head, face, chest, arms, hands, and abdomen.

¶ 7    Benjamin Koch, an Illinois State Police homicide investigator, was called to the residence at 7:30 p.m. Koch took several photographs of the bedroom where the victim's

2

body lay on the floor and collected other evidence, including a wooden board near the bedroom's back closet area that appeared to be used to keep the closet door closed. There was a stained comforter on the floor inside the closet. Koch also noted that the thermostat at the residence was set to 90 degrees.

¶ 8    Dr. Raj Nanduri conducted the autopsy of the victim on December 26, 2005. The victim was six years old, weighed 34 pounds, and was 45 inches tall. The body was already showing signs of decomposition, the victim's torso was distended, and the body had a uniform green color to it. Rigor mortis had passed. Dr. Nanduri noted that the victim suffered from several blunt force trauma injuries and bruising covered both sides of the victim's face. The internal portion of the autopsy confirmed mesenteric injuries, and the victim's acute bleeding was determined to have occurred less than two hours prior to his death. Dr. Nanduri concluded with a reasonable degree of scientific certainty that the victim died as a result of a homicide due to blunt force trauma to the abdomen.

¶ 9    Koch attended the autopsy of the victim and collected DNA, fingerprints, hair, and clothing. Koch also took pictures of defendant's hands, which showed swelling in the right hand and an abrasion with some blood near a nail on the left hand. Pictures of Lohman's hands did not show any injuries.

¶ 10   Evidence at trial established the following altercation took place between defendant and the victim. Only a brief summary of the altercation is necessary for the purpose of this appeal. The victim, who was very small at 34 pounds and underweight for a six-year-old, was beaten by defendant at the residence where the two resided on the morning of December 24, 2005, until he was lying unresponsive on the floor.

¶ 11     On that morning, the victim had urinated in his bedroom's closet and defendant was yelling at him about it. The victim bit down on defendant's finger during the altercation, and defendant responded by hitting the victim at least 5 to 10 times in an attempt to allegedly get his finger released from the victim's mouth. Defendant claimed the victim had called him the "N" word in addition to biting down on his finger, to which defendant responded by hitting the victim in his chest area.

¶ 12     Lohman, the victim's mother, placed the victim on his bed after the beating. The victim did not move or talk again despite Lohman shaking his body. Lohman testified that she believed the victim was still breathing, and did not call for medical assistance until approximately 36 hours after the beating.

¶ 13     Lohman pled guilty to aggravated battery of a child, but it was stipulated she never struck the victim. Lohman testified that she did not beat the victim, but did fail to protect him.

¶ 14     During defendant's trial, the defense introduced a forensic pathologist who testified that the victim's death was the result of seizures caused by epilepsy rather than defendant's beating of the victim. The State rebutted the defense's claim by introducing a different forensic pathologist who testified he found no credible evidence that the victim had epilepsy. After hearing all the evidence, the jury convicted defendant of first-degree murder.

¶ 15     Defendant's sentencing began with the trial court inquiring into defendant's claims of ineffective assistance of counsel. Defendant complained that he asked counsel to impeach Lohman's testimony concerning a prior statement made to police during the trial,

4

but counsel responded that "she looked bad enough." Defendant also complained that counsel failed to impeach Lohman's testimony indicating she did not perform CPR by not presenting the 9-1-1 tape, which defendant alleged would suggest that she did perform CPR and explain the tear to the victim's mesentery. Defendant alleged his counsel told him he could not find the tape. Lastly defendant claimed he had numerous witnesses available to testify on his behalf, but none of these witnesses were presented in court or contacted by counsel.

¶ 16 The trial court denied defendant's claims of ineffective assistance of counsel, ruling that it observed trial counsel's performance and believed it was excellent. The trial court then proceeded with the sentencing hearing. After reviewing evidence and hearing the arguments of counsel, the trial court determined that section 5-8-1(a)(1)(c)(ii) of the Unified Code of Corrections required a mandatory natural life sentence without the possibility of parole.

¶ 17 Defense counsel then filed a motion to reconsider the sentence, arguing the Illinois Supreme Court in *People v. Wooters*, 188 Ill. 2d 500, 722 N.E.2d 1102 (1999), found that the enactment of section 5-8-1(a)(1)(c)(ii) was unconstitutional and, relying on *People v. Quevedo*, 403 Ill. App. 3d 282, 932 N.E.2d 642 (2010), the statute had never been reenacted. After hearing argument from both parties, the trial court determined that *Quevedo* did not apply and affirmed that the statute required a natural life sentence without the possibility of parole. Defendant now appeals his claims of ineffective assistance of counsel and motion to reconsider the sentence.

5

¶ 18                                    ANALYSIS

¶ 19    Defendant first alleges the trial court erred when it failed to appoint counsel to investigate his claims of ineffective assistance of counsel. The State contends the trial court made a proper inquiry of defendant personally in court, and the trial court's determination that defendant's claims of ineffective assistance of counsel lacked merit and pertained to trial strategy is not manifestly erroneous. We agree with the State.

¶ 20    A trial court's decision to not appoint new counsel for a defendant based on a judgment that the ineffective assistance claim is spurious shall not be disturbed on appeal unless the decision is manifestly erroneous. *People v. McCarter*, 385 Ill. App. 3d 919, 941, 897 N.E.2d 265, 285 (2008) (citing *People v. Woodson*, 220 Ill. App. 3d 865, 877, 581 N.E.2d 320, 329 (1991)).

¶ 21    Regarding a defendant's *pro se* posttrial motion challenging the competence of his attorney at trial, the following rule has been developed from the Illinois Supreme Court's decision in *People v. Krankel*, 102 Ill. 2d 181, 464 N.E.2d 1045 (1984). In *Krankel*, the defendant's trial counsel failed to contact an alibi witness or present an alibi defense at trial, and the defendant raised a *pro se* posttrial challenge to his attorney's competence at trial. The trial court refused to appoint new counsel to represent the defendant on his ineffective assistance of counsel claim, but allowed the defendant to argue his motion.

¶ 22    Defendant appealed, and the appellate court held that the trial court erred in denying the defendant's *pro se* motion for a new trial based on the fact that his counsel failed to contact or present an alibi witness. *People v. Krankel*, 113 Ill. App. 3d 992, 447 N.E.2d 1379 (1983). State then filed a petition for leave to appeal with the Illinois

6

Supreme Court, which was granted.

¶ 23    In their briefs, both parties agreed that the trial court should have appointed new counsel to represent the defendant at the posttrial hearing concerning his ineffective assistance of counsel claim.   The Illinois Supreme Court concluded that the failure to appoint new counsel to argue a defendant's *pro se* posttrial motion alleging ineffective assistance of counsel was error and remanded the cause for a new hearing on the claim.

¶ 24    The Illinois Supreme Court has since expanded the court's finding in *Krankel* and has determined that new counsel is not automatically required in every case in which a defendant presents a *pro se* posttrial motion alleging ineffective assistance of counsel. *People v. Moore*, 207 Ill. 2d 68, 77, 797 N.E.2d 631, 637 (2003).   Rather, the trial court must first examine the factual basis of the defendant's claim before determining whether new counsel should be appointed. *Moore*, 207 Ill. 2d at 77-78, 797 N.E.2d at 637.

¶ 25    The trial court is not required to appoint new counsel and may deny the defendant's *pro se* motion if it determines the claim lacks merit or pertains only to matters of trial strategy. *Moore*, 207 Ill. 2d at 78, 797 N.E.2d at 637.   However, new counsel should be appointed if the defendant's allegations show possible neglect of the case, in which case the newly appointed counsel represents the defendant at the hearing on the defendant's *pro se* claim of ineffective assistance of counsel. *Moore*, 207 Ill. 2d at 78, 797 N.E.2d at 637.

¶ 26    *Moore* involved a defendant convicted of first-degree murder and aggravated unlawful restraint who was sentenced to death.   On appeal the defendant alleged the trial court erred in failing to consider his *pro se* posttrial motion for appointment of counsel

other than the public defender, and requested that the cause be remanded to the trial court for an appropriate inquiry into his *pro se* posttrial motion.

¶ 27    The Illinois Supreme Court in *Moore* determined the trial court conducted no inquiry into the defendant's allegations of ineffective assistance of counsel, and the record did not indicate whether the trial court ever read the defendant's *pro se* posttrial motion. The Illinois Supreme Court stated that "[t]he law requires the trial court to conduct some type of inquiry into the underlying factual basis, if any, of a defendant's *pro se* posttrial claim of ineffective assistance of counsel." *Moore*, 207 Ill. 2d at 79, 797 N.E.2d at 638. After finding no such investigation occurred, the Illinois Supreme Court remanded the cause to the trial court for that limited purpose. Specifically, the Illinois Supreme Court stated:

> "[W]e remand the cause for the limited purpose of allowing the trial court to conduct the required preliminary investigation. If the court determines that the claim of ineffectiveness is spurious or pertains only to trial strategy, the court may then deny the motion and leave standing defendant's convictions and sentences. If the trial court denies the motion, defendant may still appeal his assertion of ineffective assistance of counsel along with his other assignments of error." *Moore*, 207 Ill. 2d at 81-82, 797 N.E.2d at 640.

¶ 28    As noted in *Moore*, the primary concern for the reviewing court is whether the trial court conducted an adequate inquiry into the defendant's *pro se* allegations of ineffective assistance of counsel. *Moore*, 207 Ill. 2d at 78, 797 N.E.2d at 638. While an adequate inquiry is of primary concern, there is no set format for how an initial inquiry

8

into a defendant's *pro se* allegations of ineffective assistance of counsel should be conducted, and a trial court's inquiry is somewhat flexible. *People v. Fields*, 2013 IL App (2d) 120945, ¶ 40, 997 N.E.2d 791.

¶ 29 Trial counsel may simply answer questions and explain the circumstances surrounding the defendant's allegations, a brief discussion between the trial court and defendant may be sufficient, and the trial court may evaluate the defendant's *pro se* allegations of ineffective assistance of counsel based on its knowledge of the defense counsel's performance at trial and the insufficiency of the defendant's allegations on their face. *Moore*, 207 Ill. 2d at 78-79, 797 N.E.2d at 638. There is no case law suggesting "the State should be an active participant during the preliminary inquiry. In fact, typically, virtually no opportunity for State participation is offered during the preliminary inquiry." *Fields*, 2013 IL App (2d) 120945, ¶ 40, 997 N.E.2d 791.

¶ 30 In the instant case, the trial court held a hearing on defendant's claims of ineffective assistance of counsel. Defendant claimed his counsel was ineffective because he failed to: (1) present witnesses demonstrating the lack of frequency defendant was around the murder victim; (2) play the 9-1-1 recording to impeach Lohman's claim that she did not perform CPR; and (3) present a closing argument with sufficient zealousness.

¶ 31 The trial court stated the following regarding defendant's ineffective assistance of counsel claims during the sentencing hearing:

"I saw Mr. Keefe's performance during this trial. I didn't think–I didn't see anything that I thought was below par in any manner. I thought his performance

9

was actually excellent. I think all the attorneys involved gave excellent representation. Mr. Keefe gave an excellent closing.

I see no neglect of the case. And I'm going to deny the claim. The claim lacks merit and pertains only to matters of trial strategy, if anything at all. So that claim is denied."

¶ 32 The State asserts defendant has failed to demonstrate that the court's finding defendant's claims of ineffective assistance of counsel lacked merit and pertained to trial strategy is manifestly erroneous. We agree. The record indicates the trial court properly inquired of defendant and counsel concerning the factual basis of defendant's allegations of ineffective assistance of counsel. For the following reasons, we affirm the trial court's judgment denying defendant's ineffective assistance of counsel claims.

¶ 33 In order to succeed on a claim of ineffective assistance of counsel, it must be shown that: (1) counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that but for counsel's professional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). If no prejudice to the defendant is established, there is no need to separately determine whether counsel's performance was deficient. *People v. Albanese*, 104 Ill. 2d 504, 527, 473 N.E.2d 1246, 1256 (1984).

¶ 34 There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and the challenged action or inaction was the product of sound trial strategy. *Strickland*, 466 U.S. at 689. Matters of trial strategy are generally immune from ineffective assistance of counsel claims and will not support such claims

10

unless counsel's strategy was so unsound that counsel completely failed to conduct any meaningful adversarial testing of the State's case. *People v. Patterson*, 217 Ill. 2d 407, 441, 841 N.E.2d 889, 909 (2005).

¶ 35 Decisions regarding which witnesses to call and what evidence to present at trial generally constitute matters of trial strategy that cannot form the basis of an ineffective assistance of counsel claim. *People v. Leeper*, 317 Ill. App. 3d 475, 482, 740 N.E.2d 32, 39 (2000). When a defendant's claims are "conclusory, misleading, or legally immaterial, or do not bring to the trial court's attention a colorable claim of ineffective assistance of counsel, the trial court may be excused from further inquiry." *People v. Bobo*, 375 Ill. App. 3d 966, 985, 874 N.E.2d 297, 315 (2007).

¶ 36 Defendant's ineffective assistance of counsel claims on appeal concern only Lohman's testimony. Defendant claims he asked his counsel to impeach Lohman's testimony with her prior statements made to police, but counsel responded that "she looked bad enough." Defendant alleges counsel's failure to impeach Lohman's testimony in certain instances constitutes ineffective assistance of counsel. We disagree.

¶ 37 Defendant maintains Lohman's testimony was critical to the State's prosecution in three areas. The first issue concerns the number of times defendant hit the victim in an attempt to allegedly stop the victim from biting his finger. Defendant asserts that by the time trial commenced, Lohman claimed she attempted to stop defendant from striking the victim and that defendant had struck victim at least 15 to 20 times, but alleges Lohman was on tape in a police interview prior to trial claiming defendant hit the victim 4 or 5 times. Defendant alleges it was Detective Taylor who initially told Lohman that

11

defendant struck the victim 10 to 15 times, and Detective Taylor who later told Lohman that defendant struck the victim at least 20 to 30 times.

¶ 38 Defense counsel's decision to not impeach Lohman's testimony concerning the number of times defendant struck the victim cannot be deemed ineffective of counsel given that defendant admitted in a police interview played to the jury that he struck the victim several times in the chest and face. Defendant's ineffective assistance of counsel claim fails to pass the standard set in *Strickland*, as there is not a reasonable probability the result of defendant's proceedings would have been different if Lohman's testimony concerning the number of times defendant struck the victim had been impeached. Defendant's admission to striking the victim informed the jury that the victim's injuries were caused by defendant. Accordingly, this claim lacks merit and counsel's decision to not impeach in this instance can be only deemed the product of sound trial strategy.

¶ 39 Defendant's second issue regarding counsel's failure to impeach Lohman's testimony concerns the frequency with which the victim experienced what was believed to be "fake seizures" and the frequency with which the victim directed the "N" word toward defendant. Defendant indicates Lohman denied at trial that the victim would fake seizures and purposefully injure himself, but alleges Lohman told Officer Emery in a police interview that the victim did injure himself when he faked seizures.

¶ 40 Similar to defendant's first issue concerning ineffective assistance of counsel, counsel's decision to not impeach Lohman's testimony regarding the frequency of the victim's "fake seizures" and frequency with which the victim directed the "N" word toward defendant cannot be deemed ineffective assistance of counsel given that

12

defendant admitted in a police interview played to the jury that he struck the victim several times in the chest and face.

¶ 41 It was determined at trial that the victim died from blunt force trauma injuries, not a seizure. The jury determined these injuries were caused by defendant. Defendant also fails to indicate how the failure to impeach Lohman's testimony regarding the frequency with which the victim directed the "N" word towards defendant amounts to ineffective assistance of counsel. Accordingly, defendant fails to overcome the presumption that counsel's action or inaction was the result of sound trial strategy.

¶ 42 Defendant's third issue regarding counsel's failure to impeach Lohman's testimony concerns the failure to present the 9-1-1 tape at trial. Defendant indicates Lohman testified that she did not perform CPR on the victim. However, defendant alleges the 9-1-1 tape indicates Lohman did perform CPR on the victim while Lohman was on the phone with the 9-1-1 operator, and that an improper administration of CPR could have explained the tear in the victim's mesentery that contributed to the victim's cause of death.

¶ 43 At trial the jury reviewed evidence that indicated the victim had been dead for several hours before medical assistance arrived, the body was cold to the touch, and the body was beginning to decompose. Rigor mortis had passed at the time Lohman dialed 9-1-1. It is undisputed that the victim was deceased at the time Lohman placed the body on the floor at the instructions of the 9-1-1 operator. Even if Lohman did perform CPR on the victim, it cannot explain the tear in the victim's mesentery because the victim had already been deceased for several hours.

¶ 44 Accordingly, counsel's decision to not impeach Lohman's testimony concerning

13

whether she performed CPR cannot form the basis for an ineffective assistance of counsel claim, as counsel had justified reason to believe the testimony would have no benefit to the defense and the result of the proceeding would have been no different if the 9-1-1 tape had been introduced. Defendant again fails to overcome the presumption that counsel's action or inaction was the result of sound trial strategy.

¶ 45 It should also be noted that defendant's counsel thoroughly impeached Lohman's testimony at trial. Defendant points to three specific instances in which counsel did not impeach Lohman's testimony, which we find was the product of sound trial strategy. However, defendant fails to acknowledge the numerous instances in which counsel did impeach Lohman's testimony.

¶ 46 On direct examination during trial, Lohman admitted she did not tell police the truth in her statement because she was afraid. On cross-examination, defense counsel elicited testimony from Lohman concerning what she claimed not to remember after examining her police statement and its inconsistencies. For example, in her testimony Lohman claimed she went to a gas station immediately after the altercation between defendant and the victim occurred, but the surveillance video at the gas station did not show her there at that time.

¶ 47 Additionally, the jury was instructed as to Lohman's testimony:

> "When a witness says she was involved in the commission of a crime with the defendant, the testimony of that witness is subject to suspicion and should be considered by you with caution. It should be carefully examined in light of the other evidence in the case."

14

¶ 48    Counsel's decision to not impeach three specific instances of Lohman's testimony was sound trial strategy, especially considering counsel thoroughly impeached Lohman at trial by informing the jury of her inconsistent statements and lack of credibility.

¶ 49    The State asserts defendant's claims of ineffective assistance of counsel should be waived because the claims are being made for the first time on appeal.  We disagree, as defendant's complaint that counsel failed to impeach Lohman regarding her statements made to police was discussed during the *Krankel* hearing.  Therefore, defendant's ineffective assistance of counsel claims concerning Lohman's testimony are not waived, but are still unsuccessful nonetheless.

¶ 50    The second issue raised by defendant on appeal concerns his sentencing.  At defendant's sentencing hearing, the State and defendant disagreed whether defendant was subject to a mandatory term of natural life pursuant to section 5-8-1(a)(1)(c)(ii) of the Unified Code of Corrections.  Defendant alleged resentencing is required because the mandatory life sentence provision that the trial judge applied was struck down as a single subject violation by the Illinois Supreme Court in *People v. Wooters*, 188 Ill. 2d 500, 722 N.E.2d 1102 (1999).  Defendant relied on *Quevedo*, 403 Ill. App. 3d at 298, 932 N.E.2d at 656, which found that the legislature never reenacted section 5-8-1(a)(1)(c)(ii) of the statute.

¶ 51    The State asserted section 5-8-1(a)(1)(c)(ii) of the statute had been reenacted by the legislature several times, and defendant's mandatory life sentence was appropriate. After hearing both parties' arguments, the trial court determined the statute required a mandatory sentence of natural life in prison, which the trial court affirmed after a hearing

15

on defendant's motion to reconsider the sentence.

¶ 52    On appeal defendant again alleges resentencing is required because the mandatory life sentence provision that the trial judge applied was struck down as a single subject violation by the Illinois Supreme Court in *Wooters*. Defendant asserts the legislature has never reenacted the mandatory natural life sentence for a person 17 years or older who murders a child under 12 years old, while the State asserts section 5-8-1(a)(1)(c)(ii) of the statute has been reenacted by the legislature several times. For the following reasons, we reverse the trial court's determination that the statute required a mandatory sentence of natural life in prison and remand with directions to sentence defendant without applying the mandatory life sentence provision of section 5-8-1(a)(1)(c)(ii).

¶ 53    Section 5-8-1(a)(1)(c)(ii) mandates a term of natural life for persons 17 years or older who are found guilty of murdering an individual under 12 years of age. This portion of the statute reads the same today as it did on December 24, 2005, the date of the offense in the instant case. In pertinent part, section 5-8-1(a)(1)(c)(ii) states:

"(a) Except as otherwise provided in the statute defining the offense ***, a sentence of imprisonment for a felony shall be a determinate sentence set by the court under this Section, according to the following limitations:

(1) for first degree murder,

* * *

(c) the court shall sentence the defendant to a term of natural life imprisonment when the death penalty is not imposed if the defendant,

16

> (ii) is a person who, at the time of the commission of the murder, had attained the age of 17 or more and is found guilty of murdering an individual under 12 years of age; or, irrespective of the defendant's age at the time of the commission of the offense, is found guilty of murdering more than one victim[.]" 730 ILCS 5/5-8-1(a)(1)(c)(ii) (West 2010).

¶ 54 In the case at issue, defendant alleges the mandatory life sentence provision that the trial judge applied was struck down as a single subject violation by the Illinois Supreme Court in *Wooters*, and the provision has never been reenacted. We agree. Recent case law supports this position.

¶ 55 In *Wooters*, the 20-year-old defendant was charged by information with first-degree murder of her 19-day-old son. The defendant was subsequently sentenced to a term of 25 years' imprisonment after the trial court determined that section 5-8-1(a)(1)(c)(ii), which mandated life imprisonment for any offender 17 years or older who is convicted of murdering a child less than 12 years of age if the offender is not sentenced to death, was unconstitutional.

¶ 56 The State appealed, and the Illinois Supreme Court affirmed. On appeal, the defendant argued for the first time that section 5-8-1(a)(1)(c)(ii), as amended, violated the single subject rule found in article IV, section 8, of the Illinois Constitution, which provides in relevant part: "Bills, except bills for appropriations and for the codification,

revision or rearrangement of laws, shall be confined to one subject." Ill. Const. 1970, art. IV, § 8. The State conceded that the constitutional dimension of the question allowed the court to address the question even though it was being raised for the first time on appeal. The Illinois Supreme Court proceeded to analyze the legislative history of section 5-8-1(a)(1)(c)(ii).

¶ 57 Section 5-8-1(a)(1)(c)(ii) became law as 1 of 10 sections contained in Public Act 89-203 (Pub. Act 89-203 (eff. July 21, 1995)). The Illinois Supreme Court noted that the legislature entitled Public Act 89-203 "An Act in relation to crime." (Internal quotation marks omitted.) *Wooters*, 188 Ill. 2d at 511, 722 N.E.2d at 1109.

¶ 58 After analyzing Public Act 89-203, the Illinois Supreme Court found one section that was unrelated to crime. In addition to the sections that amended the criminal code, Public Act 89-203 also amended sections 15-1508 and 15-1701 of the Illinois Mortgage Foreclosure Law codified in the Code of Civil Procedure. The court determined these amendments were distinctly noncriminal in nature and, as such, violated article IV, section 8, of the Illinois Constitution. The Illinois Supreme Court determined that without a "natural, logical connection of all provisions of Public Act 89-203 to a single subject, the enactment is unconstitutional as violative of article IV, section 8." *Wooters*, 188 Ill. 2d at 514, 722 N.E.2d at 1110.

¶ 59 The mandatory term of natural life imprisonment pursuant to section 5-8-1(a)(1)(c)(ii) was more recently addressed by the appellate court in *Quevedo*, 403 Ill. App. 3d at 298, 932 N.E.2d at 656. In *Quevedo*, the trial court imposed a mandatory term of life imprisonment after finding the 23-year-old defendant guilty of first-degree murder

18

of his 8-month-old son. On appeal, the defendant argued the sentence was void and must be vacated because Public Act 89-203, which had made the sentence mandatory by amending the statute under which the defendant was sentenced, had been declared unconstitutional by the Illinois Supreme Court in *Wooters*. The defendant alleged a 20-year term, the statutory minimum in effect before Public Act 89-203 was enacted, should be imposed because the trial judge indicated he would have done so if section 5-8-1(a)(1)(c)(ii) as amended did not mandate a term of natural life.

¶ 60    The appellate court in *Quevedo* concluded the legislature never reenacted section 5-8-1(a)(1)(c)(ii) of the statute after the State conceded that "the statutory language mandating a term of natural life imprisonment under section 5-8-1(a)(1)(c)(ii) is void and was not reenacted after *Wooters*." *Quevedo*, 403 Ill. App. 3d at 298, 932 N.E.2d at 656. The State advocated remanding the cause for a new sentencing hearing at which the trial court could impose a term according to the statutory language in effect when the defendant committed the offense or when his sentence was imposed, and the court agreed. Prior to its amendment by Public Act 89-203, defendants convicted of first-degree murder were subject to a sentencing range of 20 to 60 years of imprisonment. 730 ILCS 5/5-8-1(a)(1)(a) (West 1994). The defendant was subsequently sentenced to a 35-year term of imprisonment rather than the initial life sentence imposed by the trial court.

¶ 61    The court's findings in *Wooters* and *Quevedo* indicate the provision mandating life imprisonment pursuant to section 5-8-1(a)(1)(c)(ii) is unconstitutional, and no recent case law suggests the statute has been formally reenacted. Accordingly, we remand defendant's resentencing request to the trial court with directions to sentence defendant

without applying the mandated life sentence provision of section 5-8-1(a)(1)(c)(ii).

¶ 62    The State alleges the mandated life sentence provision of section 5-8-1(a)(1)(c)(ii) has been successfully reenacted by the legislature several times.  While several public acts have been passed since Public Act 89-203 was ruled unconstitutional in *Wooters*, we find nothing that indicates anything has been tendered to the contrary of the 2010 holding in *Quevedo*.

¶ 63    A statute that violates the single subject clause is void in its entirety.  *Quevedo*, 403 Ill. App. 3d at 298, 932 N.E.2d at 656.  As a result, all of the amendment's provisions, including the specific provision under which the defendant was sentenced, are void *ab initio* as if they had never been passed.  *Quevedo*, 403 Ill. App. 3d at 298, 932 N.E.2d at 656.  "The effect of enacting an unconstitutional amendment to a statute is to leave the law in force as it was before the adoption of the amendment."  *People v. Gersch*, 135 Ill. 2d 384, 390, 553 N.E.2d 281, 283 (1990).

¶ 64    When the Illinois Supreme Court declares a statute unconstitutional, the only way in which the legislature may remedy the statute's infirmity is by amending or reenacting that statute.  *People v. Blair*, 2013 IL 114122, ¶ 31, 986 N.E.2d 75.  When a statute is held unconstitutional because it was adopted in violation of the single subject rule, the legislature may revive the statute by reenacting the same provision, but in a manner that does not offend the single subject rule.  *People v. Blair*, 2013 IL 114122, ¶ 31, 986 N.E.2d 75 (citing *People v. Ramsey*, 192 Ill. 2d 154, 157, 735 N.E.2d 533, 534 (2000)).

¶ 65    The State first alleges that the finding in *Wooters* of Public Act 89-203 to be unconstitutional    created    a    discretionary    life    sentence,    and    the    penalty    of    life

20

imprisonment itself was not unconstitutional. The State indicates the court in *Wooters* stated that to "impose lifetime imprisonment on an adult convicted of murdering a child is commensurate with the state's dedication to protecting children." *Wooters*, 188 Ill. 2d at 509, 722 N.E.2d at 1108.

¶ 66    While the State correctly cites what the *Wooters* court stated regarding its view of the crime of murdering children, which the court notes is an especially heinous crime, the State fails to indicate how a discretionary natural life sentence was created from the *Wooters* finding that Public Act 89-203 is unconstitutional. In fact, the *Wooters* court held that Public Act 89-203 violated the single subject clause of the Illinois Constitution and affirmed the trial court's sentence of 25 years for a 20-year-old defendant who murdered her 19-day-old son. There is no indication in *Wooters* that a discretionary life sentence was created from finding Public Act 89-203 unconstitutional.

¶ 67    We do note, however, that section 5-8-1(a)(1)(b) provides "the court may sentence the defendant to a term of natural life imprisonment" for the crime of first-degree murder if the trier of fact finds beyond a reasonable doubt that "the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty." 730 ILCS 5/5-8-1(a)(1)(b) (West 2010). The trial court does have discretion to sentence a defendant to life imprisonment, just not pursuant to the mandated life sentence provision of section 5-8-1(a)(1)(c)(ii).

¶ 68    The second issue raised by the State on appeal asserts the legislature revived subsection 5-8-1(a)(1)(c)(ii) by reenacting all of section 5-8-1(a)(1)(c) in a manner that did not offend the single subject rule. The State proceeds to analyze legislative history in

21

support of its argument. We disagree.

¶ 69 The legislature amended Public Act 89-203 (Pub. Act 89-203 (eff. July 21, 1995)) by enacting Public Act 89-428 (Pub. Act 89-428 (eff. Dec. 13, 1995)) to provide for mandatory natural life sentences. However, Public Act 89-428 was found violative of the single subject rule in *Johnson v. Edgar*, 176 Ill. 2d 499, 680 N.E.2d 1372 (1997). In *Johnson* the Illinois Supreme Court addressed whether the legislature violated the single subject rule of the Illinois Constitution in its enactment of Public Act 89-428.

¶ 70 The Illinois Supreme Court noted that the legislature "must indeed go very far to cross the line to a violation of the single subject rule." *Johnson*, 176 Ill. 2d at 515-16, 680 N.E.2d at 1380. The Illinois Supreme Court determined that by enacting Public Act 89-428, "the legislature clearly crossed that line. No matter how liberally the single subject rule is construed, Public Act 89-428 violates that rule." *Johnson*, 176 Ill. 2d at 516, 680 N.E.2d at 1380. The Illinois Supreme Court held that Public Act 89-428 was unconstitutional because it violated the single subject clause of the constitution.

¶ 71 The State points out that prior to the supreme court's decision in *Johnson*, the legislature realized that Public Act 89-428 violated the single subject rule and enacted Public Act 89-462 (Pub. Act 89-462 (eff. May 29, 1996)), which provided that certain offenses would be subject to mandatory natural life sentences. The State contends Public Act 89-462, unlike Public Act 89-428, has never been found unconstitutional for violating the single subject rule. The State indicates the Illinois Supreme Court has recognized that "Public Act 89-462 also recodified the provisions of article 2 of Public Act 89-428," and asserts this recodification cured any single subject rule infirmity. We

22

disagree.

¶ 72　After careful review of the legislative history, we find no indication that Public Act 89-462 addressed the single subject rule violation in Public Act 89-203. Public Act 89-462 merely reenacted the change from discretionary to mandatory natural life sentences for certain offenses, and we find nothing further to suggest otherwise. Accordingly, Public Act 89-462 did not cure the single subject rule infirmity of Public Act 89-203.

¶ 73　The State also asserts that a statute found unconstitutional does not cease to exist, and the legislature does not have to formally reenact a statute that has been found unconstitutional by the inclusion of language within symbols such as "<<+ +>>" or by highlighting in a public act, citing to *People v. Hauschild*, 226 Ill. 2d 63, 871 N.E.2d 1 (2007), and *People v. Blair*, 2013 IL 114122, 986 N.E.2d 75. However, these two cases do not involve a statute that has been found unconstitutional based on a single subject violation, and are irrelevant to the instant case.

¶ 74　In *Hauschild*, the court found that the 15-year statutory enhancement to the sentence for armed robbery while armed with a firearm, which resulted in a sentencing range of 21 to 45 years, violated the proportionate penalties clause. The court determined that "when an amended sentencing statute has been found to violate the proportionate penalties clause, the proper remedy is to remand for resentencing in accordance with the statute as it existed prior to the amendment." *Hauschild*, 226 Ill. 2d at 88-89, 871 N.E.2d at 15.

¶ 75　*Blair* involved a defendant who was convicted of armed robbery while armed with

a firearm and appealed. The issue on appeal concerned whether Public Act 95-688 (Pub. Act 95-688 (eff. Oct. 23, 2007)), which amended the armed violence statute, revived the sentencing enhancement in the armed robbery statute that the court held unconstitutional in *Hauschild*. The Illinois Supreme Court determined Public Act 95-688 did revive the armed robbery sentencing enhancement after finding the "legislature revived the unconstitutional statute by curing the proportionality violation through amendment of the comparison statute. Appellate court cases which hold to the contrary are overruled." *Blair*, 2013 IL 114122, ¶ 35, 986 N.E.2d 75.

¶ 76 The State indicates the Illinois Supreme Court in *Blair* found that the void *ab initio* doctrine does not mean that a statute held unconstitutional never existed. The court in *Blair* stated:

> "The power to enact laws, and the concomitant power to repeal those laws, reside in the General Assembly. [Citations.] Our function is to interpret those laws, determining and giving effect to the legislature's intent. [Citations.] Although we are obligated to declare an unconstitutional statute invalid and void [citations], such a declaration by this court cannot, within the strictures of the separation of powers clause, repeal or otherwise render the statute nonexistent. Accordingly, when we declare a statute unconstitutional and void *ab initio*, we mean only that the statute was constitutionally infirm from the moment of its enactment and is, therefore, unenforceable. As a consequence, we will give no effect to the unconstitutional statute and instead apply the prior law to the parties before us." *Blair*, 2013 IL 114122, ¶ 30, 986 N.E.2d 75.

24

¶ 77 While the State is correct in its assertion that a statute found unconstitutional does not cease to exist, it is still nevertheless unenforceable. Concerning an act that violates the single subject rule and is found unconstitutional, the court in *Blair* instructed:

> "Ordinarily, when this court declares a statute unconstitutional, or otherwise invalid, the only way in which the legislature may remedy the statute's infirmity is by amending or reenacting *that* statute. For example, when a statute is held unconstitutional because it was adopted in violation of the single subject rule, the legislature may revive the statute by reenacting the same provision, but in a manner that does not offend the single subject rule. [Citations.] When a statute is found to violate the proportionate penalties clause under the identical elements test, however, amendment or reenactment of *that* statute is not the legislature's only recourse. This is so because of the unique nature of an identical elements proportionality violation." (Emphasis in original.) *Blair*, 2013 IL 114122, ¶ 31, 986 N.E.2d 75.

¶ 78 Unlike the *Hauschild* and *Blair* cases that involve violations of the proportionate penalties clause, the instant case involves a violation of the single subject rule. As such, the only way the legislature may remedy the statute's infirmity is by reenacting that statute. Curative legislation must "exhibit on its face evidence that it is intended to cure or validate defective legislation." *People v. Reedy*, 186 Ill. 2d 1, 15, 708 N.E.2d 1114, 1120 (1999). In the instant case, we fail to find that the legislature has successfully reenacted the provision of Public Act 89-203 mandating life imprisonment.

25

¶ 79                        CONCLUSION

¶ 80    The Illinois Supreme Court invalidated the provision mandating life imprisonment for adult murderers of children in *Wooters*. The State has proposed that this provision has been reenacted, but it has been unsuccessful to date. Accordingly, defendant's mandatory life sentence is remanded to the trial court with directions to sentence defendant without applying the mandatory life sentence provision in section 5-8-1(a)(1)(c)(ii) of the Unified Code of Corrections, but instead under the appropriate guidelines in effect prior to the enactment of Public Act 89-203.

¶ 81    Affirmed in part; reversed and remanded in part with directions.

2015 IL App (5th) 120371

NO. 5-12-0371

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

THE PEOPLE OF THE STATE OF ILLINOIS,        )     Appeal from the
                                            )     Circuit Court of
        Plaintiff-Appellee,                 )     St. Clair County.
                                            )
v.                                          )     No. 05-CF-2092
                                            )
LEE CRUTCHFIELD,                            )     Honorable
                                            )     Brian Babka,
        Defendant-Appellant.                )     Judge, presiding.
_____

**Opinion Filed:**           June 29, 2015
_____

**Justices:**        Honorable Richard P. Goldenhersh, J.

                     Honorable Thomas M. Welch, J., and
                     Honorable Bruce D. Stewart, J.,
                     Concur

_____

**Attorneys**        Michael J. Pelletier, State Appellate Defender, Karen Munoz, Jacqueline
**for**              L. Bullard, Deputy Defenders, John M. McCarthy, Assistant Appellate
**Appellant**        Defender, Office of the State Appellate Defender, Fourth Judicial District,
                     400 West Monroe Street, Suite 303, P.O. Box 5240, Springfield, IL
                     62705-5240
_____

**Attorneys**        Hon. Brendan F. Kelly, State's Attorney, St. Clair County, 10 Public
**for**              Square, Belleville, IL 62220; Patrick Delfino, Director, Stephen E.
**Appellee**         Norris, Deputy Director, Rebecca E. McCormick, Staff Attorney,
                     Office of the State's Attorneys Appellate Prosecutor, 730 E. Illinois
                     Highway 15, Suite 2, P.O. Box 2249, Mt. Vernon, IL 62864
_____