NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 210720-U

NO. 4-21-0720

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 24, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Macon County |
| LaNAY DENIECE WALLS, | ) | No. 16CF750 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Rodney S. Forbes, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices Harris and Knecht concurred in the judgment.

**ORDER**

¶ 1     *Held*:  (1) The evidence was sufficient to convict defendant of criminal trespass to a residence and (2) defendant's attorney did not provide ineffective assistance.

¶ 2     At a Macon County bench trial, the trial court found defendant, LaNay Deniece Walls, guilty of one count of criminal trespass to a residence pursuant to section 19-4(a)(2) of the Criminal Code of 2012 (Criminal Code) (720 ILCS 5/19-4(a)(2) (West 2016)), and sentenced her to 12 months' probation. Defendant filed a posttrial motion asserting the insufficiency of the evidence. The court denied defendant's motion and she appealed.

¶ 3     Defendant raises two issues on appeal. First, she claims the State failed to prove she committed criminal trespass to a residence. Second, defendant posits the cumulative effect of three alleged errors committed by her attorney amounted to ineffective assistance of counsel.

¶ 4     We affirm the judgment of the trial court on defendant's sufficiency-of-the-evidence claim and find her ineffective-assistance-of-counsel claim to be without merit.

¶ 5                                    I. BACKGROUND

¶ 6     The State originally charged defendant with criminal trespass to a residence (*id.*) in 2016, and she was convicted by a jury in 2017. Defendant took a direct appeal, and we remanded for issues other than those raised herein. *People v. Walls*, 2019 IL App (4th) 170403-U, ¶ 136. On remand, defendant was convicted at a bench trial, and sentenced to 12 months of probation. The State presented six witnesses, and defendant presented two. We summarize below the testimony relevant to the issues presented in this appeal.

¶ 7     For the State, Andreanna Wood testified she had been in a relationship with defendant's son, Nirin Walls, for approximately a year. The relationship ended when Nirin shot at Andreanna and two others. During the relationship, Nirin lived with Andreanna, and they attended "normal family functions" together with defendant at their home and at defendant's home. Andreanna related defendant had met her children.

¶ 8     After the State charged Nirin for offenses stemming from shooting at her, Andreanna went to defendant's home with her brother, Taylor Wood, and his girlfriend, Deshawn Gazelle, to retrieve the keys to her car. When they arrived, defendant was on the front porch and two of her daughters were standing in the front yard. Andreanna and the others stayed in the car. Andreanna retrieved the keys from defendant's daughter through the car window. Andreanna testified she told defendant and her daughters to stay away from her, as there was "no reason" for them "to have any type of contact ever again."

¶ 9     Subsequently, in April or May 2016, Andreanna testified she was at her home with her sister, Drenesha Wood, her three children, and her mother, when her daughter, Amiya Wood,

ran to the back of the house where she was doing laundry and told her, "Nirin's mom's in the house." Andreanna went to the front of the house and found defendant standing in her living room inside the doorway, with the screen door closed behind her. Defendant had a clipboard in her hands, and she told Andreanna she "should have been shot," and because Andreanna had taken her son away, she would make sure Andreanna would never see her children again. Andreanna knew defendant worked for the Illinois Department of Children and Family Services (DCFS), but she could not recall if defendant advised her she had been sent there by the agency. Andreanna told defendant to leave, which she did, but only after remaining for a few minutes and saying "what she had to say." Andreanna first called DCFS about defendant's visit, and later she called the police.

¶ 10        Amiya, who was 16 years old at the time of trial, testified she recognized defendant when she entered the home because her mother had dated defendant's son Nirin. When defendant arrived, Amiya was in the living room at the front of the home playing with her siblings. Amiya related defendant just "walked in" without knocking, and neither she nor anyone else opened the door to let defendant in. Defendant came fully into the front room such that the screen door closed behind her. Amiya heard defendant tell Andreanna she deserved to have her children taken away because defendant's son was in jail.

¶ 11        Drenesha, Andreanna's sister, testified she was in a back bedroom of Andreanna's home when defendant arrived. Drenesha heard her sister having a "heated exchange" with someone and came out to find defendant in the living room. She heard defendant tell Andreanna "that she deserved to die, and since she didn't die, she was going to make sure she never got to see her children again."

¶ 12    Taylor Wood, Andreanna's brother, testified about the retrieval of her keys from defendant's home. He heard Andreanna, defendant, and defendant's daughters "arguing and yelling." Taylor saw defendant leave the porch and approach the others, but she stayed 20 feet from the car, while her daughters were much closer. Andreanna told defendant and the others in a "very loud and clear" manner to "stay away" from her and her family and to leave them alone.

¶ 13    The State's last witness, Angelique Maxwell, a DCFS supervisor, testified DCFS policy required an investigator to immediately advise their supervisor if the investigator was acquainted with someone they had been assigned to investigate. DCFS policy also prohibited an investigator from entering a home unless someone invited them inside. In the cases when a child answered the door, the investigator in most cases was to ask for an adult to come to the door.

¶ 14    Defendant called her DCFS supervisor, Robbie Gephart, to describe the call Gephart received from defendant after leaving Andreanna's home. Gephart related defendant was very upset and crying and told her she had been kicked out of Andreanna's home "because they had some history with each other." Gephart agreed there was a conflict, and she assigned another investigator. Gephart testified some of the reports given to investigators do not contain all of a subject's information, sometimes providing only a location.

¶ 15    Defendant testified she was assigned, as a DCFS investigator, to conduct an investigation at an address in Decatur, but the report she was given provided no identifying information other than that address. Defendant went to the location, observed a young child outside, and asked the child whether her mother was home. The child opened the front door of the home for defendant, who then entered and observed an older woman and a younger woman. After having seen Drenesha, Andreanna's sister, testify, defendant identified Drenesha as the younger

woman. After asking Drenesha if she was the child's mother, defendant heard the child tell her mother, Andreanna, DCFS was at the door.

¶ 16 When Andreanna came to the living room, defendant recognized her because her son Nirin had brought Andreanna over to her house "twice." Defendant tried to advise Andreanna she was there for a DCFS investigation, but Andreanna told her to get out of her house. Defendant testified she did so and called her supervisor.

¶ 17 Defendant related she recognized the home as it was one of the many homes where she had seen her son. She testified she did not know, however, it was Andreanna's home, though she knew Nirin had lived with Andreanna. Defendant noted she and Nirin had long been "estranged" and Andreanna was one of Nirin's "many" girlfriends. Defendant denied she had ever spent a holiday with Andreanna except once, when Andreanna came over to defendant's house for a birthday party.

¶ 18 As for Andreanna retrieving her car keys from defendant's home, defendant testified she remained on the porch. She observed everyone around the car was "engaged." Defendant was not asked whether she recalled Andreanna telling her to stay away.

¶ 19 The trial court found defendant guilty, noting defendant's testimony was not credible, particularly her testimony related to the key exchange, her entry of Andreanna's home, and whether she knew who lived in that home. In addition, the court found the versions of events provided by Andreanna, Taylor, and Amiya credible. In particular, the court found Amiya had not given defendant permission to enter, and even if she had, Andreanna's prior statements prohibited defendant's entry.

¶ 20 Defendant filed a posttrial motion attacking the sufficiency of the evidence, which the trial court denied. Thereafter, the court sentenced defendant to 12 months' probation.

¶ 21        This appeal followed.

¶ 22                                II. ANALYSIS

¶ 23                A. Sufficiency of the Evidence and Standard of Review

¶ 24        We will not reverse a conviction on appeal "for insufficient evidence unless the evidence is so improbable or unsatisfactory that a reasonable doubt remains as to the defendant's guilt." *People v. Harris*, 2018 IL 121932, ¶ 26. We view the evidence in the light most favorable to the State and consider whether any rational trier of fact could have concluded the evidence established the crime's essential elements beyond a reasonable doubt. *Id.* We do not retry the accused, and we draw any reasonable inference in favor of the State. *Id.* Throughout, the fact finder's responsibility is to weigh the evidence, resolve conflicts within the evidence, and draw reasonable inferences therefrom. *Id.*

¶ 25        Our supreme court has repeatedly found the testimony of a lone witness can be sufficient to uphold a conviction, if that testimony is positive and credible. *Id.* ¶ 27. This is true even if that single witness's testimony is contradicted by others. *Id.* In short, we will not substitute our judgment "for that of the trier of fact on issues involving the weight of the evidence or the credibility of the witnesses." *People v. Brown*, 2013 IL 114196, ¶ 48.

¶ 26                        B. Criminal Trespass to a Residence

¶ 27        Defendant was charged and convicted of committing criminal trespass to a residence pursuant to section 19-4(a)(2) of the Criminal Code, which provides: "A person commits criminal trespass to a residence when, without authority, he or she knowingly enters the residence of another and knows or has reason to know that one or more persons is present or he or she knowingly enters the residence of another and remains in the residence after he or she knows or has reason to know that one or more persons is present." 720 ILCS 5/19-4(a)(2) (West 2016).

- 6 -

¶ 28 Defendant argues the evidence was insufficient to prove she knowingly entered Andreanna's home without authority. Specifically, she claims the State's witnesses were not credible.

¶ 29 As the trial court noted, both Andreanna and Taylor testified Andreanna told defendant to stay away from her and her family and to leave them alone. Thus, the court reasonably inferred defendant knew Andreanna did not wish to have any contact with her.

¶ 30 Additionally, Amiya testified clearly and precisely that defendant entered the home uninvited and without knocking. The trial court also heard testimony that DCFS's practice was to refrain from entering a home if a minor answers the door, and instead ask and wait for an adult.

¶ 31 As for defendant's knowledge she was entering Andreanna's home, defendant admitted she recognized the home as one of the places where she had seen Nirin, and she knew Nirin had lived with Andreanna. Contrary to defendant's testimony, Andreanna testified defendant and she had been to each other's homes for family functions, and that defendant had previously met her children. Amiya testified she recognized defendant as Nirin's mother, which corroborated Andreanna's testimony that Amiya told Andreanna that defendant was in their home.

¶ 32 Given it was the trial court's province to weigh the evidence, resolve any conflicts in the evidence, and draw reasonable inferences from the evidence, we will not second-guess the court's judgment on the sufficiency or credibility of the evidence. The court was in a superior position to hear and evaluate the testimony of Andreanna, defendant, and the other witnesses. We do not find the court's conclusions so improbable or unsatisfactory that reasonable doubt remains. The court's conclusions about the absence of authority to enter the home and knowledge of the identity of its residents are not irrational based on the evidence presented.

¶ 33    Thus, we also disagree with defendant's proposition the conviction was based solely on the testimony of Andreanna and her family. We find defendant's challenge to the sufficiency of the evidence unavailing.

¶ 34           C. Defendant's Claims of Ineffective Assistance of Counsel

¶ 35    Defendant asserts her attorney's assistance was ineffective for (1) failing to introduce purported prior inconsistent statements made by Andreanna about when the offense occurred and how many times defendant had been to her home, (2) failing to introduce a document that supported defendant's identification of the exact date of the offense, and (3) failing to object to Taylor's testimony he heard Andreanna tell defendant to leave her alone as hearsay. Notably, each of these propositions is based on defendant's insistence her conviction turned on Andreanna's testimony, which, as we noted above, is not accurate.

¶ 36    As to the first claimed error, defendant asserts Andreanna's testimony from the first trial was inconsistent with her testimony at the second trial. She claims, had her counsel introduced such inconsistencies, she would have effectively impeached Andreanna's credibility. In particular, defendant argues Andreanna testified at the first trial she thought the offense occurred in May instead of April and she said defendant had been to her home "hundreds of times." Defendant argues, had her attorney impeached Andreanna with the inconsistencies, the trial court would not have determined defendant's entry was unauthorized. As to the second error, defendant posits her attorney should have introduced a DCFS travel document supporting her testimony the incident occurred in April, which would have impeached Andreanna's testimony and simultaneously bolstered defendant's credibility. As to the third purported error, defendant claims her attorney should have objected on hearsay grounds to Taylor's testimony Andreanna told defendant to stay away from her. She claims the admission of Taylor's hearsay testimony improperly bolstered

Andreanna's credibility. Finally, defendant claims the cumulative effect of her attorney's errors unduly prejudiced her.

¶ 37　　　　Ineffective assistance of counsel claims are appropriate for review on direct appeal if the record is sufficient to permit such review. *People v. Veach*, 2017 IL 120649, ¶ 46. If the record is not adequate or complete, however, such claims are best addressed in collateral proceedings. *Id.* We are to carefully consider each such claim to determine whether we can consider it on direct review. *Id.* ¶ 48.

¶ 38　　　　To prevail on an ineffective assistance of counsel claim, it must be established that the attorney's conduct did not meet an objective standard of reasonableness, and that there is a reasonable probability, if not for the attorney's errors, the outcome of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Without prejudice, we do not reach the issue of whether the attorney's performance was deficient. *People v. Crutchfield*, 2015 IL App (5th) 120371, ¶ 33. The defendant must overcome the strong presumption counsel's action or inaction was legitimately strategic, and was not outside the broad range of reasonable assistance. *Strickland*, 466 U.S. at 689. An attorney's strategic decisions are generally insufficient to support an ineffectiveness claim, and are immune from attack unless counsel entirely failed to perform "any meaningful adversarial testing of the State's case." *Crutchfield*, 2015 IL App (5th) 120371, ¶ 34.

¶ 39　　　　As for matters of witness credibility, an attorney's determinations relating to "which witnesses to call and what evidence to present at trial generally constitute matters of trial strategy that cannot form the basis of an ineffective assistance of counsel claim." *Id.* ¶ 35. In *Crutchfield*, counsel's decision not to impeach the victim with prior inconsistent statements about the number of times the defendant struck her, was not ineffective assistance because doing so

would not likely have changed the outcome given the defendant's admissions in a police interview, played for the jury, that he struck her several times. *Id.* ¶ 38. Thus, counsel's determination not to impeach the victim was "sound trial strategy," insufficient to support a claim of ineffective assistance of counsel. *Id.*

¶ 40 Herein, counsel's decisions relative to the exact date of the offense were well-taken as there was not a reasonable probability impeaching Andreanna on this issue would have changed anything. The exact date was not a critical issue, there was no dispute defendant entered Andreanna's home, and the parties generally agreed the offense occurred in April or May. Further, as noted above, the trial court's decision did not hinge on Andreanna's testimony. As well, because we can safely assume the inconsistences defendant argues are the only differences between Andreanna's testimony at the first and second trials, counsel's impeachment decisions relative to the offense date were sound strategy given most of Andreanna's testimony was consistent. See, *e.g.*, *People v. Clay*, 379 Ill. App. 3d 470, 481-82 (2008) (holding counsel's failure to impeach a witness with testimony from the first trial was not ineffective assistance because "large portions" of the testimony at the second trial were consistent). Thus, impeachment "would have been difficult and potentially counterproductive." *Id.* at 482.

¶ 41 Likewise, the number of times defendant had been to Andreanna's home was not a crucial issue. Defendant admitted she had been there before to see her son Nirin and knew Nirin lived with Andreanna. The trial court rationally determined, based on the testimony of several individuals, that defendant knew Andreanna lived in the home defendant entered. Thus, impeaching Andreanna as defendant suggests counsel should have done would not have been significant. Because there was no reasonable probability such impeachment would have changed

the outcome, counsel's determination not to try to impeach Andreanna based on this issue was a reasonable strategic decision and cannot support an ineffective-assistance claim.

¶ 42    As for the hearsay objection to Taylor's testimony, it was also reasonable strategy for counsel not to object for the foregoing reasons. In addition, however, Taylor's objectionable testimony was likely admissible to show defendant knew of Andreanna's warning. See, *e.g.*, *People v. Sorrels*, 389 Ill. App. 3d 547, 553-54 (2009) (This court noted one police officer's testimony, about another officer's direction to defendant to stop running, was not hearsay because it fell into the broad category of out-of-court statements, such as instructions and warnings, that are not hearsay.).

¶ 43    Thus, we are confident, had counsel acted as defendant complains she should have, the outcome would not have been different. The trial court accepted Andreanna's and her family's testimony that defendant was not authorized to enter Andreanna's home, and it discredited defendant's testimony she was invited into the home. Counsel's decisions each constituted sound trial strategy, and they cannot form a basis for an ineffective-assistance-of-counsel claim, either individually or as a whole. Therefore, we reject defendant's claims as meritless.

¶ 44                      III. CONCLUSION

¶ 45    For the foregoing reasons, we affirm the trial court's judgment.

¶ 46    Affirmed.