NOTICE

Decision filed 01/27/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 180344-U

NO. 5-18-0344

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Randolph County. |
| | ) | |
| v. | ) | No. 17-CF-35 |
| | ) | |
| LAVONN U. MONROE, | ) | Honorable |
| | ) | Richard A. Brown, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE WELCH delivered the judgment of the court.
Justices Barberis and Wharton concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Where the State proved by a preponderance of the evidence that the defendant had violated a condition of his probation, where the circuit court did not abuse its discretion in imposing a sentence of imprisonment for two years, and where the circuit court adequately inquired into the defendant's postsentencing *pro se* complaints about his attorney's representation, and any argument to the contrary would lack merit, this court must grant appointed appellate counsel's motion to withdraw and must affirm the judgment of conviction.

¶ 2   The defendant, Lavonn U. Monroe, pleaded guilty to felony domestic battery and was sentenced to probation for one year. He was found to have violated a condition of his probation and was sentenced to imprisonment for two years. He now appeals from the judgment of conviction. The defendant's court-appointed attorney on appeal, the Office of the State Appellate Defender (OSAD), has concluded that this appeal lacks merit, and on that basis OSAD has filed with this court a motion to withdraw as counsel, along with a brief in support thereof. See *Anders*

1

*v. California*, 386 U.S. 738 (1967). OSAD provided the defendant with a copy of its *Anders* motion and brief. This court provided him with ample opportunity to file a *pro se* brief, memorandum, or other document explaining why OSAD should not be allowed to withdraw or why this appeal has substantial merit, but the defendant has not taken advantage of that opportunity. This court has examined OSAD's *Anders* motion and brief, as well as the entire record on appeal. For the reasons that follow, this court has concluded that the instant appeal does indeed lack merit. Accordingly, this court must grant OSAD's *Anders* motion to withdraw as counsel and must affirm the judgment of conviction.

¶ 3                                    BACKGROUND

¶ 4     In February 2017, the defendant was charged with domestic battery. 720 ILCS 5/12-3.2(a)(1) (West 2016). Christina Burlison was the complainant. The offense was a Class 4 felony due to the defendant's having one prior domestic-battery conviction. 720 ILCS 5/12-3.2(b) (West 2016). (Apparently, Burlison was not the complainant in that prior domestic-battery case.)

¶ 5     On April 7, 2017, the state's attorney, the defendant, and defense counsel appeared before the circuit court. The state's attorney and defense counsel informed the court that the defendant would plead guilty and would be released that same day on the condition that he have no contact with the complainant; there was no agreement as to sentencing. The defendant agreed with those terms and indicated that he wanted to plead guilty. The court thoroughly admonished the defendant as to the nature of the charge, the possible penalties, his right to plead guilty or not guilty, his right to a trial, whether by a judge or by a jury, his rights at trial, the State's burden of proof at a trial, and that a plea of guilty would waive each of his rights, including the right to a trial, and the defendant indicated his understanding of all that. The defendant pleaded guilty to domestic battery. The court asked the defendant whether anyone had threatened, intimidated, or forced him

2

to plead guilty, or whether anyone had promised him anything that had not been shared with the court in order to persuade him to plead guilty, and the defendant answered in the negative. The court found the defendant's plea knowing and voluntary. (The record on appeal also includes a written plea of guilty signed by the defendant.) The State provided a factual basis for the plea, stating that the evidence would show that on February 27, 2017, in Sparta, Randolph County, Illinois, the defendant caused bodily harm to Christina Burlison, a household member, by striking her over the head with a metal chair, and he previously had been convicted of domestic battery on September 8, 1998, in Randolph County case No. 98-CM-422. Neither defense counsel nor the defendant had any objection to the State's factual basis. The court found a factual basis for the guilty plea. A presentence investigation report (PSI) was ordered.

¶ 6       As the guilty-plea hearing neared its end, the following exchange occurred: "THE COURT: Now, listen, Lavonn—DEFENDANT MONROE: Yes. THE COURT:—I don't know how to get through to you to stay away from that woman. DEFENDANT MONROE: Yeah, yeah, yeah." The judge asked, and the parties discussed, plans for removing Burlison's clothes and other property from the defendant's house.

¶ 7       The PSI, prepared by the probation department, included the defendant's criminal history. In 2008, the defendant was sentenced to the Illinois Department of Corrections for 10 years, after having been found guilty of unlawful delivery of cannabis, in Randolph County case No. 07-CF-28. In 2002, the defendant was sentenced to the Illinois Department of Corrections for five years, after having been found guilty of unlawful delivery of controlled substance, in Perry County case No. 01-CF-224. In 1998, the defendant was sentenced to 21 days in the county jail, after pleading guilty to two counts of domestic battery and one count of contributing to the delinquency of a minor, in Randolph County case No. 98-CM-422. Also in 1998, the defendant was sentenced to

3

21 days in the county jail, after pleading guilty to criminal trespass to land, in Randolph County case No. 98-CM-535. In 1995, the defendant was sentenced to probation for 24 months, after having been found guilty of unlawful possession with intent to deliver a lookalike substance, in Champaign County case No. 95-CF-810. In 1994, the defendant was sentenced to the Illinois Department of Corrections for two years, after pleading guilty to theft over $300, in Randolph County case No. 94-CF-121. The defendant's criminal history also included various misdemeanor convictions and ordinance violations for which fines were imposed.

¶ 8     On May 25, 2017, the sentencing hearing was held. Neither party presented witnesses. The State recommended three years of imprisonment, while the defense recommended probation with domestic-abuse counseling and anger management. The judge sentenced him to probation for a period of 1 year, with 60 days in the county jail and "[n]o contact" with the complainant, whom he mistakenly called Melissa Burlison, not Christina Burlison. The defendant was thoroughly admonished as to his appeal rights, and he indicated his understanding.

¶ 9     On May 26, 2017, the court entered a written order of probation, for a period of one year. The written order stated, *inter alia*, that the defendant was not to violate any statute of any jurisdiction. "Special conditions" of probation included serving 60 days in the county jail and "no contact in any manner with Christina A. Burlison."

¶ 10     On October 18, 2017, the State filed a petition to revoke probation. It alleged that the defendant (1) committed domestic battery by striking Christina Burlison on the face and neck, and (2) "made contact with Christina Burlison."

¶ 11     On October 25, 2017, the defendant made his first appearance on the petition to revoke. The prosecutor was present. The court appointed the defendant's plea-and-sentencing counsel to represent him in the revocation proceedings. With counsel not present, and against the advice of

4

the court, the defendant spoke of matters relating to the petition to revoke, stating that his phone would show that Burlison, ever since she obtained an order of protection against him, had been steadily phoning and texting him, "and I haven't answered none of it." The court replied that although the prosecutor might be "interested in hearing it," such information was irrelevant to the purpose of the hearing.

¶ 12    In late November 2017, the court appointed a new attorney to represent the defendant in revocation proceedings. (Apparently, the former attorney had health problems.) This new attorney continued to represent the defendant for the remainder of the proceedings in the circuit court.

¶ 13    On December 11, 2017, the circuit court held a hearing on the petition to revoke the defendant's probation. The State announced that it would proceed on the petition's second allegation, and it called a single witness—Andrew Dahlem, a Sparta police officer. Dahlem testified that on September 25, 2017, he was called to a residence on West Main Street in Sparta. Dahlem thought it was the home of Dwayne Dodson. In the back yard of the residence, Dahlem saw the defendant and Christina Burlison. The defense also called one witness, the defendant. The defendant testified that he and Burlison were "not together" at Dodson's house. Upon the arrival of Dahlem, the defendant was "sitting in a chair" and Burlison was "off somewhere talking to somebody." The defendant did not have a conversation with Burlison—indeed, he "never said not [*sic*] one word to her"—at the Dodson residence that day. On cross-examination by the State, the defendant testified that Burlison phoned him, and he spoke with her, "maybe once or twice" that day. The court found that the defendant had violated the probation condition that he have no contact with Burlison. A PSI was ordered.

¶ 14    On January 11, 2018, the court held a sentencing hearing. Only one witness was called to testify—Christina Burlison, for the State. Burlison, age 47, testified that she and the defendant

5

dated, on and off, for three years. The two of them were dating on September 25, 2017, when Burlison went to the defendant's house in Sparta. They spent time "hanging out" and "drinking a little bit." Burlison left the defendant's house in order to help a friend, but she returned later. According to Burlison, when she and the defendant were again inside his house, the defendant "grabbed" her by the back of her shirt collar and "drug [*sic*] me to the floor and then drug me into the living room." Burlison identified photographs that showed bruising on both cheeks, bruising on her right arm, and marks on her neck, all injuries from September 25, 2017. Burlison recalled the defendant's hitting her with a chair in February 2017. After that incident, she and the defendant reconciled, but "things just started to escalate and get worse," with "more hitting and bruising and choking and all kinds of stuff."

¶ 15    On cross-examination by defense counsel, Burlison admitted that she had contacted the defendant multiple times on September 25, 2017, asking to visit him, and had found a ride to his house, all while knowing that she was not supposed to be near the defendant. When the defendant grabbed her, the time was approximately 4:30 to 5 p.m., and "[i]t went on through the evening." Burlison attempted to leave, but the defendant would not allow her to leave. Finally, they both left the defendant's house and walked a couple of blocks to the home of the defendant's friend, Dwayne Dodson. Two of Burlison's daughters happened to be there. When they learned that the defendant had been hitting their mother, they phoned the police. The police showed up at the Dodson residence and spoke with Burlison and the defendant.

¶ 16    The State argued for imprisonment for the maximum extended term of six years, while defense counsel argued for probation or, at most, one year in prison. The court sentenced the defendant to imprisonment for two years, plus mandatory supervised release for four years.

6

¶ 17  The defendant filed, through counsel, a timely motion to vacate the sentencing order and to reconsider the sentence. On April 23, 2018, the court held a hearing on the defendant's motion. As defense counsel reviewed the procedural history of the case, the defendant interrupted her. "She's not saying what I asked her to say," the defendant told the court. "I do not want her talking for me. She is not saying what I asked her to say." Defense counsel continued, and after she had finished, the court asked the defendant whether he had anything to say. The defendant noted that Burlison had testified at his most recent sentencing hearing (on January 11, 2018) but not at his probation-revocation hearing (on December 11, 2017), and therefore the content of her testimony played no role in his probation's revocation. "[S]o I don't see how that is being used as anything to do with my probation," the defendant said. Indeed, Burlison should not have been allowed to testify at the sentencing hearing, the defendant argued, "for the simple fact that what she testified to actually didn't amount to anything as far as I'm concerned because I was never charged. I was never arrested. I was never even questioned and had to do with [*sic*] anything that she testified to." Next, the defendant complained that he was unaware that he could call witnesses to testify at the sentencing hearing. Defense counsel never advised him of that opportunity, he said, and this was a source of dissatisfaction with counsel. When Burlison arrived to testify, he felt "ambushed" because "I didn't have a chance to have any of my people here to testify on my behalf."

¶ 18  At that point, the prosecutor said that the defendant's second complaint warranted a *Krankel* inquiry, an inquiry that the circuit court then performed. During that *Krankel* inquiry, the defendant reminded the judge, and the judge acknowledged that he remembered, the time when the defendant said he wanted to have his phone in the courtroom so that he could show the judge that Burlison had been phoning and texting him. According to the defendant, the judge said that he could not have the phone for that purpose. "Somehow," the defendant continued, the prosecutor

7

"knew about that because *** he asked me about that on the stand," and "there was no way" that the prosecutor would have known about that unless defense counsel had told him. "[H]e asked me about those specific calls on the stand when I was on the stand [*sic*] on December the 11th," the defendant clarified. "There is no way he would have known that." Defense counsel replied that she had been trying to convince the defendant that Burlison's contacting him was irrelevant, and that "the crux of this whole case is just no contact." The defendant did not have to phone her or invite her to his residence, for the only thing that mattered was contact, defense counsel clarified. The defendant saw the situation very differently, counsel concluded, and that had been the point of contention between the defendant and counsel from the beginning. The court announced its finding that the defendant's complaints against his attorney "are insufficient to rise to the level of claiming ineffective assistance of counsel." The court also found that the sentence was not improper, and denied the motion to reconsider.

¶ 19    On June 28, 2018, the clerk of the circuit court, at the request of the defendant, filed on his behalf a notice of appeal, thus perfecting the instant appeal. The court appointed OSAD to represent the defendant.

¶ 20                                    ANALYSIS

¶ 21    This appeal is from the revocation of the defendant's probation and the defendant's subsequent sentencing to imprisonment. As previously mentioned, the defendant's appointed attorney on appeal, OSAD, has filed an *Anders* motion to withdraw as counsel and a supporting brief. In its *Anders* brief, OSAD discusses three potential issues on appeal, *viz.*: (1) whether the State proved a probation violation by a preponderance of the evidence; (2) whether the circuit court, after finding that the defendant violated his probation, abused its discretion in sentencing the defendant to imprisonment for two years; and (3) whether the circuit court erred in denying the

8

defendant's motion to reconsider sentence after the defendant expressed dissatisfaction with counsel. These three issues will be considered sequentially.

¶ 22  A violation of a condition of probation must be proved by the State by a preponderance of the evidence. 730 ILCS 5/5-6-4 (West 2016). When the evidence is conflicting, the circuit court is responsible for weighing the credibility of witnesses and evaluating the testimony. *People v. Crowell*, 53 Ill. 2d 447, 451-52 (1973). At his probation-revocation hearing on December 11, 2017, the State presented a Sparta police officer who testified that on September 25, 2017, he was called to a residence on West Main Street in Sparta, and in the back yard of that residence he observed the defendant and Christina Burlison. The defendant testified that when the officer arrived, he was "sitting in a chair" and Burlison was "off somewhere talking to somebody." On cross-examination by the State, the defendant testified that Burlison phoned him, and he spoke with her, "maybe once or twice." Such evidence was sufficient for the court to find that the defendant violated the "special condition" of probation that called for "no contact in any manner with Christina A. Burlison." The finding certainly is not against the manifest weight of the evidence. See *Crowell*, 53 Ill. 2d at 451-52.

¶ 23  Next, this court considers whether the circuit court, after finding that the defendant violated his probation, abused its discretion in sentencing the defendant to imprisonment for two years. See *People v. Wyatt*, 305 Ill. App. 3d 291, 297 (1999). The defendant pleaded guilty to domestic battery (720 ILCS 5/12-3.2(a)(1) (West 2016)), which was a Class 4 felony due to the defendant's having a prior domestic-battery conviction (720 ILCS 5/12-3.2(b) (West 2016)). The instant crime consisted of the defendant's striking Christina Burlison over the head with a metal chair, causing bodily harm. The sentence of imprisonment for a Class 4 felony is not less than one year and not more than three years. 730 ILCS 5/5-4.5-45(a) (West 2016). Furthermore, the defendant, having

9

been found guilty of unlawful delivery of cannabis in May 2007 and having been sentenced for that crime to 10 years of imprisonment in August 2008, was eligible for an extended-term sentence of not less than 3 years and not more than 6 years. 730 ILCS 5/5-5-3.2(b)(1), 5-4.5-45(a) (West 2016). Given the nature of the offense for which the defendant was sentenced, a two-year sentence does not amount to an abuse of discretion. That is especially true in light of his extended-term eligibility, his record of criminality as detailed *supra*, and his violent behavior toward Burlison while on probation.

¶ 24 Finally, this court considers whether the circuit court erred in denying the defendant's motion to reconsider sentence after the defendant had expressed dissatisfaction with his attorney's representation. This court notes that the defendant, at his April 23, 2018, hearing on his motion to reconsider sentence, did not actually accuse defense counsel of ineffective assistance; he expressed disagreement or dissatisfaction with her representation of him. However, the court conducted the type of inquiry that it should conduct when a defendant *pro se* accuses his attorney of ineffectiveness. See *People v. Krankel*, 102 Ill. 2d 181 (1984). This court will not overturn the circuit court's determination that a defendant's claims do not require the appointment of new counsel unless that determination is manifestly erroneous. *People v. Crutchfield*, 2015 IL App (5th) 120371, ¶ 20. The manner in which the inquiry was conducted is reviewed *de novo*. *People v. Jolly*, 2014 IL 117142, ¶ 28.

¶ 25 At the hearing on the motion to reconsider sentence, the circuit court asked the defendant for a specific example of what had displeased him about defense counsel. In response, the defendant recounted the time when he informed the court that his phone would show that Burlison had been telephoning and texting him. "Somehow," the defendant said, the prosecutor "knew about that because *** he asked me about that on the stand" at the hearing on the petition to revoke

10

probation, and "there was no way" that the prosecutor would have known about those calls and texts unless defense counsel had told him. The defendant seemed to be suggesting that his attorney had violated the attorney-client privilege by informing the prosecutor about the phone calls and texts from Burlison to him. However, the prosecutor's knowledge of Burlison's calls and texts to the defendant was not at all shocking, for the record shows that the prosecutor was present in the courtroom when the defendant, during his first appearance on the petition to revoke probation, informed the court about them. The prosecutor could not have failed to know about them. In this way, the one specific example offered by the defendant was rebutted by the record. (The defendant did not offer any specifics about his alleged lack of awareness of his right to call witnesses at his sentencing hearing, or what any of those witnesses may have said if called.)

¶ 26    The circuit court conducted an adequate inquiry of the defendant's *pro se* claims made at the hearing on his motion to reconsider sentence. *People v. Moore*, 207 Ill. 2d 68, 78 (2003). With that inquiry out of the way, the court was free to deny the motion to reconsider.

¶ 27                              CONCLUSION

¶ 28    This court has considered the potential issues raised by OSAD in its *Anders* brief and has found them to be without merit. A review of the entire record on appeal has not revealed any issue of arguable merit. Accordingly, OSAD is granted leave to withdraw as counsel, and the judgment of conviction is affirmed.


¶ 29    Motion granted; judgment affirmed.